# Exhibit C

LAW OFFICES

## CLAYMAN & ROSENBERG

305 MADISON AVENUE

NEW YORK, NEW YORK 10165

(212) 922-1080

FAX: (212) 949-8255

CHARLES E. CLAYMAN
SETH L. ROSENBERG
BRIAN D. LINDER
AMY E. MILLARD
PAUL S. HUGEL
ISABELLE A. KIRSHNER
THOMAS C. ROTKO

ELLEN YAROSHEFSKY
COUNSEL

April 9, 2008

<u>VIA FEDERAL EXPRESS</u>

Deborah Landis, Esq.
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, N.Y. 10007

Re: <u>United States v. Robert Coplan, et al.</u>
S1 07 Crim. 453 (SHS)

Dear Ms. Landis:

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure and Local Criminal Rule 16.1, defendants Robert Coplan, Martin Nissenbaum, Richard Shapiro, and Brian Vaughn ("E&Y defendants"), and defendant Charles Bolton, request that the government provide the following particulars to the allegations in the Superseding Indictment:[1]

1. The Superseding Indictment contains references to a number of entities and individuals who are not identified by name. Please confirm the following:

Law Firm A - Locke, Liddell & Sapp (¶ 25)

Law Firm B - Brown & Wood (partner - R.J.Ruble) (¶ 27)

Law Firm C - Arnold & Porter (¶ 54)

---

[1]In light of the volume of documents produced by the Government in this case, to the extent the response to any of the requests to identify information (as opposed to confirm information) is reflected in documents, please identify the relevant documents.

Law Firm D - Proskauer, Rose (¶ 54)

Company Z - Bricolage (¶ 56)

L. Trading Group  - LaRocque Trading (Count Two)

C. Partnership - Cornerstone Partners LP (Count Three)

T.M. - Thomas Munro (Count Four)

K.M. - Kathryn Munro (Count Four)

<u>Count One</u>

2. ¶ 5 - Identify the "banks, financial institutions, investment advisory firms, law firms" that each of the defendants worked  with to "design, market, and implement" tax shelters.

3. ¶¶ 7, 8, 9, and 10 - Identify the dates, times, and places of "sales presentations" made by each of the defendants, and the client(s) to whom they were made.

4. ¶¶ 13, 14, 15, 16, 18, and 31 - Identify the individuals and/or entities who the government will claim were co-conspirators of the defendants, as alleged in the foregoing paragraphs of the indictment.

5. State whether the government will claim that each of the above identified co-conspirators were also, as claimed in the Superseding Indictment, a co-conspirator in the alleged fraudulent CDS shelters (¶¶ 26 and 26(d)), the alleged fraudulent COBRA shelters (¶¶ 29, 30,(e), 31, and 33), the alleged fraudulent CDS Add-On shelter (¶ 53), and the alleged fraudulent PICO shelter (¶59).  If not, identify which of the co-conspirators were involved in each of the alleged fraudulent tax shelters.

6. ¶¶ 13, 14 = Indicate whether the government will claim that the phrase "tax shelters" includes any tax shelter other than those identified in the Superseding Indictment, and if so, identify the tax shelter.

7. ¶ 14 - State whether the government will claim that there were other "costs" to the client than those enumerated and if so, state what such additional costs were.

8. ¶ 16 - If not already contained in the government's production of "core documents," identify the "transactional documents and other materials containing false and fraudulent descriptions. . ." that the government claims were created by the defendants or that they assisted in creating.

9. ¶ 16- Confirm that the PFC professional who received an email from Robert Coplan in 2001 is

Page -2-

John Shockley.

10. ¶ 17 - Identify the acts of each E&Y defendant which the government will claim helped clients to obtain false and fraudulent opinion letters.

11. ¶ 23(a) - Identify the statute, regulation, or common law standard which required the formation documents of the CDS partnerships to disclose that tax benefits were sought.

12. ¶ 23(b) - Identify the statute, regulation or common law standard that defines "trading partnership."

13. ¶ 23 (c)  - Confirm that the identity of the "co-conspirator employed by Bolton companies" is Greg Firtik.

14. ¶ 23 (c) - Confirm that  "another co-conspirator" who sent an email in February 2000 is Belle Six.

15. ¶ 23(c) - Identify which of the CDS limited partnerships engaged in "high volume short term trades."

16. ¶ 23 (c)  - Identify which of the CDS limited partnerships engaged in trades that were not designed to preserve the client's capital.

17.  ¶ 23(e)  - Identify the tax code provision which required the client to have $20,000,000.00 "at risk."

18. ¶ 23(e) - Identify the statute, regulation, or common law standard which defines the term "loan," as contrasted with "purported loan" or "so-called loan."

19. ¶ 23(f) - Identify which prospective CDS clients were told by "E&Y" that the swaps would last for just over one year.

20. ¶ 23(f) - Identify who at "E&Y" told clients that the swaps would last for just over one year.

21. ¶ 23(f)  - Confirm that the identity of the co-conspirator who received an email from Brian Vaughn in June 2001 is James Hutchison.

22. ¶ 24 - Identify the "additional documents" that purported to provide non-tax business motivations for steps that were actually tax-motivated.

23. ¶25 - Identify who directed CDS clients to sign the document which related to the diversity of the investments.

24. ¶26(c) - Identify who assured the clients that they would not be liable for any amount over their initial cash contribution and describe the assurances that were provided.

25. ¶29 - Particularize what is meant by the allegation that the options had "some chance" of earning the clients a profit after the fees were paid.

26. ¶ 29 - Identify the services "offered generally" through E&Y's investment advisory services.

27. ¶ 34 - Confirm that the individual within E&Y's management who decided that E&Y would no longer market COBRA to its clients is Michael Kelley.

28. ¶34 - Identify the subject matter experts who expressed the view that COBRA would not survive scrutiny under applicable law, and identify to whom these views were expressed.

29. ¶34 - Identify the "others within E&Y" who objected to COBRA as lacking meaningful business purpose.

30. ¶ 39 - Confirm that the individual who described a "similar idea" to Brian Vaughn in or around May 2000 is Ed Ahrens.

31. ¶40 - Identify who, among the defendants, created a "false cover story" relating to CDS Add-On.

32. ¶40 - Identify who claimed that the "false cover story" had been presented by Charles Bolton, and to whom the claim was made.

33. ¶ 44 - Confirm that the individual "outside of the Viper/SISG group" who created the PowerPoint presentation is Robert Haynie.

34. ¶ 46 - Identify the "E&Y defendants" who offered CDS Add-On to existing entities and the "E&Y personnel" who met with representatives of those entities.

35. ¶46 - Identify the "representatives" and their "entities" who met with E&Y personnel.

36. ¶ 48 - Confirm that Belle Six "crafted a letter for Add-On clients." Identify any other "conspirators" who crafted the letter.

37. ¶49 - Identify the steps taken to conceal from the IRS that the "loans" were not real loans.

38. ¶50 - Confirm that Sandy Maggio of Refco is a "representative of the financial institution" who "assisted in concealing that the loans were not genuine."

39. ¶ 51 - Identify who arranged for CDS Add-On clients to sign representation letters prepared

by Law Firm A.

40. ¶ 57 -  Identify who developed a "false cover story" to explain to the IRS.

41.  ¶ 58(f) - Identify the "conspirators" who arranged for the balance of E&Y's fee to be paid by the client, and the "conspirators" who "created a phony contract."

42. ¶ 61 - Identify the false and fraudulent statements and omissions that the government will claim were contained in the template disclosure letters drafted by the defendants.

43.  ¶ 62(a), (b), (d) - Identify which portions of the testimony the government contends are "false" and which portions of the testimony the government contends are "misleading."

44. ¶62 (c) - Identify the portion of the testimony provided by Martin Nissenbaum which was "misleading."

45. ¶ 62(c) - Identify whether or not the government contends that the testimony provided by Martin Nissenbaum was false.

46.  ¶ 64 - Identify "E&Y's individual tax shelter clients," and "the entities created by the conspirators," to which the IRS sent Information Document Requests.

47. ¶ 65 - Identify the tax shelter clients and financial advisors who gave false and misleading testimony to the IRS,  and identify the statements that were false and misleading.

48.  ¶ 71 - Identify the "other E&Y partners" with whom Martin Nissenbaum discussed the possibility of using a tax shelter.

49. ¶ 72 - Confirm that the "tax shelter promoter" was Diversified Group Incorporated ("Diversified"), and that the "attorneys from Law Firm D" are Ira Akselrad and Matthew Sabloff.

50. ¶ 74- Confirm that the "other two owners" of ADFX are Diversified and Alpha Consultants.

51. ¶77- Confirm that the "attorney at Law Firm D" who drafted a legal opinion is Ira Akselrad.

52.  ¶78 - Identify who Martin Nissenbaum allegedly assisted in preparing a "Certificate of Facts."

53. ¶81- Identify the "members of the group" who made arrangements for an attorney to represent them.

54. ¶ 81 - Confirm that the attorney who Martin Nissenbaum "assisted" in drafting responses to the IDRs is Abraham Gutwein.

55. ¶81- Specify the conduct by which Nissenbaum "assisted" the attorney in the preparation of responses to the IDRs.

56. ¶82 - Identify all "false and misleading statements" contained in the responses to IDR #2.

57. ¶82(1) - Particularize what is meant by the term "no reasonable possibility" of generating a profit.

58. ¶82- Identify which of the defendants referred PICO clients to Law Firm D for opinion letters.

59. ¶82 - Identify the PICO clients who were referred to Law Firm D for opinion letters.

60. ¶ 96(j) - Identify the false statements and omissions that the government contends were contained in the documents drafted in connection with the voluntary disclosure initiative.

61. ¶97(z) - Specify who approved the hiring of a trading firm without a significant track record.

62. ¶97 (ee), (ff) - Identify the dates, times, and places of the presentations in which Martin Nissenbaum participated, and identify the clients to whom these presentations were made.

63. ¶97 (hhh) - Identify the individual to whom Martin Nissenbaum allegedly provided false and misleading information.

64. ¶97 (hhh) - Particularize the "false and misleading information" which Martin Nissenbaum provided.

65. In paragraphs 8, 31, 32, 33(a), 33(b), 33(c), 34, 51, 58, 62(a), 62(b), 62 (c), 62(d), 65, 66, 67, 78, 79, 86, 87, 89, 96, 96(g), 97, 103, 105, 110, 113, 120, 122, 124, 127, 140, and 141, the indictment refers to "among other things," "among other steps," "among others," "among the ways," and "other entities." With respect to each of these paragraphs, please identify the additional items (e.g., things, reasons, statements, ways, etc.) to which the Grand Jury was referring.

66. With respect to each of the tax shelters as to which the government intends to offer proof, does the government allege that the tax shelter was fraudulent as designed and approved by Ernst & Young, and if so, in what respects?

Count Two

67. ¶ 102 - Identify who at E&Y requested that the managing member of L. Trading Group sign a representation letter drafted by Law Firm A.

68. ¶103 - Identify who at E&Y prepared the "amnesty letter" submitted by L. Trading Group to the IRS.

69. ¶104 - Identify the "representative" of L. Trading Group who appeared before the IRS on August 26, 2003.

70. ¶104 - Identify the "false, misleading, and evasive testimony" given by the representative of the L. Trading Group.

Count Three

71. ¶107 - Identify the "E&Y personnel" who met with representatives of C. Partnership in July 2000.

72. ¶ 110 - Identify who at "E&Y" prepared the letters signed by the C. Partnership partners.

73. ¶112 - Identify the representative of the C. Partnership who appeared before the IRS on December 15, 2003.

74. ¶112 - Identify the "false, misleading, and evasive testimony" given to the IRS during the proceeding on December 15, 2003.

Count Four

75. ¶ 117 - Identify the "representative of E&Y" who spoke with K.M. in or about July 2000.

76. ¶ 121 - Identify who at "E&Y" requested that T.M. and K.M. sign a representation letter that had been drafted by Law Firm A.

77. ¶124 - Identify who at "E&Y" prepared the "amnesty letter" signed by T.M. and K.M.

We would appreciate it if you inform us by April 23, 2008 if it is your intention to provide the information requested. Thank you for your attention to this matter.

Very truly yours,

Isabelle Kirshner

cc:    AUSA Lauren Goldberg (via Federal Express)

AUSA Marshall Camp (via Federal Express)
All Defense Counsel (via First Class Mail)

April 9, 2008

Mailing List for E&Y

Paula M. Junghans, Esq.
Andrew Goldfarb, Esq.
Zuckerman Spaeder LLP
1800 "M" Street, NW
Washington, DC 20036-5802

James Tucker, Esq.
Peter Barrett, Esq.
Butler, Snow, O'Mara, Stevens & Cannada
AmSouth Plaza
210 East Capitol Street
 Suite 1700
Jackson, MS 39201

Howard Heiss, Esq.
O'Melveny & Myers
7 Times Square
New York, NY 10036

Paul Bergman, Esq.
950 Third Avenue
New York, NY 10022-2705

John Tigue, Jr., Esq.
Kristy Milkov, Esq.
Morvillo, Abramowitz, Grand,
 Iason, Anello & Bohrer, P.C.
565 Fifth Avenue
New York, NY 10017

FEDERAL EXPRESS
Deborah Landis, Esq.
U.S. Attorney's Office
 for the Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

FEDERAL EXPRESS
Lauren Goldberg, Esq.
U.S. Attorney's Office
 for the Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

FEDERAL EXPRESS
Marshall Camp
U.S. Attorney's Office
 for the Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007