**EXHIBIT Q**



|  |  |
|---|---|
| **Jay D. Nibbe**/Minneapolis /TAX/ EYLLP/US<br>05/26/2004 09.57 AM | |
| To | Barry E Robinson/Cons/TAX/EYLLP/US@EY-Namerica, Clifford R. Jones/Cons/TAX/EYLLP/US@EY-Namerica, David J. Kautter/National/TAX/EYLLP/US@EY-NAmerica, David N. Holtze/National/TAX/EYLLP/US@EY-NAmerica, David T. Boule/NewYork/TAX/EYLLP/US@EY-Namerica, James L Henderson/Cons/TAX/EYLLP/US@EY-NAmerica, Jay D. Nibbe/Minneapolis/TAX/EYLLP/US@EY-Namerica, Kate J. Barton/NewEngland/TAX/EYLLP/US@EY-Namerica, Kurt C Neidhardt/NewYork/TAX/EYLLP/US@EY-Namerica, Michael D. Carr/MissouriKansas/TAX/EYLLP/US@EY-NAmerica, Michael Sanders/Southwest/TAX/EYLLP/US@EY-Namerica, Michel Lanteigne/Tax/ErnstYoung/CA@EY-Canada, Richard B. Western/Southeast/TAX/EYLLP/US@EY-Namerica, Stephen T. Starbuck/Carolinas/TAX/EYLLP/US@EY-Namerica, Thomas Lawrence/TAX/EYLLP/US@EY-Namerica, Lynn Lawrence/Philadelphia/TAX/EYLLP/US@EY-NAmerica, Randy Cain/GulfCoast/TAX/EYLLP/US@EY-Namerica |
| cc | David J. Kautter/National/TAX/EYLLP/US@EY-NAmerica, Joseph M. Knott/LosAngeles/RealEstate/EYLLP/US@EY-NAmerica, Mark Weinberger/AEB/EYLLP/US@EY-NAmerica, David N. Holtze/National/TAX/EYLLP/US@EY-NAmerica, Scott B Hill/NATL/TAX/EYLLP/US@EY-NAmerica, George E. Peterson/NATL/TAX/EYLLP/US@EY-NAmerica, Gary A LeDonne/NewYork/TAX/EYLLP/US@EY-NAmerica, Robert B Feinberg/Connecticut/TAX/EYLLP/US@EY-NAmerica, Michael P. McSherry/National/EYLLP/US@EY-NAmerica, James J. Alex/National/TAX/EYLLP/US@EY-NAmerica, James F Knauss/NATL/TAX/EYLLP/US@EY-NAmerica |
| bcc | |
| Subject | Grand jury |

This information has been prepared and released to the practice today---I am curious about your reaction, and specifically

**WHAT OTHER QUESTIONS ARE YOU RECEIVING FROM YOUR CLIENTS ABOUT THIS MATTER THAT REQUIRE ADDITIONAL Q&A's?**

I would appreciate your feedback as soon as possible.

---

Jay D. Nibbe
Managing Partner, Markets - Tax
212 773.2781 Phone - NYC
212 773.1200 Fax
2456422 EYCOMM
Admin: Lisa Soane 212.773.5252

----- Forwarded by Jay D Nibbe/Minneapolis/TAX/EYLLP/US on 05/26/2004 12:50 PM -----

| | |
|---|---|
| **Michael P . McSherry**<br>Sent by. Michael P McSherry | To: Jay D. Nibbe/Minneapolis/TAX/EYLLP/US@EY-Namerica<br>cc:<br>Subject  Grand jury |

SDNY-00692494

05/26/2004 12.40 PM

### Background Information on Tax Shelter Grand Jury Inquiry

*A May 24, 2004, Wall Street Journal article, "Ernst & Young Faces Tax-Shelter Inquiry," indicated that Federal prosecutors in Manhattan have impaneled a grand jury that is in the early stages of a criminal investigation into Ernst & Young LLP's promotions of potentially abusive tax shelters. Several related stories have run in the Financial Times, New York Times, and over the news wires The following is background information that you may share with clients and others as questions arise.*

**Background on the Investigation**

On May 19, Ernst & Young was first notified by an Assistant United States Attorney (AUSA) that the Southern District of New York (Manhattan) had convened a grand jury investigation of Ernst & Young LLP. The AUSA advised the firm that the investigation would focus initially on one individual tax shelter, called COBRA, which was marketed to individuals from the fall of 1999 to January 2000. COBRA is the same tax strategy that Henry Camferdam and his partners entered into that was featured in a segment of CBS' *60 Minutes* last fall. Mr. Camferdam subsequently testified at a Senate sub-committee hearing that focused on tax shelters.

Although the focus of the current inquiry is on COBRA, it is possible that the inquiry could be expanded to other individual tax strategies.

At this point, we are not aware of any specific contacts or inquiries that the United States Attorney's Office has made of our current or former partners or any other current or former Ernst & Young personnel.

**The Grand Jury Inquiry Process**

A grand jury inquiry is a common technique used by prosecutors to gather evidence about a matter they are investigating By law, grand jury investigations are governed by strict secrecy provisions. As a result, organizations and individuals that are under investigation generally learn very little about the proceedings, particularly since legal counsel is not permitted to sit in when witnesses testify before the grand jury.

The *Wall Street Journal* article said," Criminal tax investigations tend to be lengthy, and probes often don't result in criminal charges" Given the early stages of this investigation it is very difficult to predict how long this matter will remain open Many grand jury investigations do not lead to indictments of the party(ies) under investigation

In February, the United States Attorney's Office in Manhattan notified KPMG that it had convened a grand jury to review KPMG's promotion of tax shelters and opened a criminal

SDNY-00692495

grand jury investigation as part of a broader announcement of leadership changes within their tax practice. Given the strict secrecy of these proceedings, we do not know the current status of the KPMG investigation

Since tax shelters remain a focus of media and Congressional attention, it is possible that other professional services firms and/or investment or commercial banks have been or may be notified of an investigation into their activities

**The Ernst & Young Position**

If clients and/or staff ask questions about the grand jury investigation please confidently tell them that:

> The firm did not do anything criminal, and is therefore cooperating fully with the grand jury investigation, just as we did during last year's settlement with the IRS and the Congressional hearings.

> We recognize the seriousness of this matter, and are confident that the firm's cooperation with the investigation will help minimize and contain any potential damage to the firm and its people.

> Although the tax strategy under investigation was aggressive, we believe that the existing law supported it and it was not "listed" at the time by the Internal Revenue Service(IRS) as a potentially abusive tax shelter At the time our firm was marketing these tax strategies, partners in the tax practice reviewed and approved them prior to their being presented to potential clients.

> These transactions were accompanied by third party tax opinions obtained from independent law firms

> The individual taxpayer clients involved were notified of the risks inherent in these aggressive positions as evidenced by our engagement letters

> The subject of tax shelters is complex, and the complexity begins—but certainly does not end—with the definition of what constitutes a tax shelter The Treasury Department, IRS, courts, lawyers, and other practitioners have wrestled with the definition again and again Beginning in the 1990's, these products were marketed with increasing frequency by investment banks, law firms, financial services firms, and accounting firms-including our firm

> Accounting, tax, legal, and investment banking professions are operating in a new environment characterized by intense public and regulator scrutiny for actions that occurred in the past in a different regulatory environment

**Ernst & Young Tax Practice Changes**

SDNY-00692496

Over the last two years, Ernst & Young has taken a number of steps to enhance the consultation among our tax professionals to help ensure the advice we render is in compliance with the letter and spirit of tax laws and regulations, is correct and appropriate for our clients, and is consistent with the standards of our firm and our profession. These changes are outlined in the appendix

SDNY-00692497