UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA,

    - v. -

ROBERT COPLAN,                          (S-1) 07 Cr. 453 (SHS)
MARTIN NISSENBAUM,
RICHARD SHAPIRO,
BRIAN VAUGHN,
DAVID SMITH, and
CHARLES BOLTON,

               Defendants.

------------------------------------X

# MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT VAUGHN'S
## OMNIBUS PRETRIAL MOTION

**BUTLER, SNOW, O'MARA,**        **PAUL B. BERGMAN, P.C.**
**STEVENS & CANNADA, PLLC**     **950 Third Avenue**
**210 E. Capitol Street, 17th Floor**   **32nd Floor**
**AmSouth Plaza Building**       **New York, NY 10022**
**Jackson, MS 39225-2567**

# TABLE OF CONTENTS

POINT I      THE SOUTHERN DISTRICT OF NEW YORK SPECIAL
GRAND JURY HAD NO LEGAL AUTHORITY TO
INDICT VAUGHN FOR FALSE STATEMENTS MADE
IN NASHVILLE, TENNESSEE; THAT ABSENCE OF
CONSTITUTIVE AUTHORITY THEREFORE DEPRIVES
THE COURT OF JURISDICTION TO HEAR THE
CHARGE IN COUNT TEN, WHICH SHOULD BE
DISMISSED ....................................................................................................... 2

    A.    A Grand Jury Must Have Jurisdiction To Bring A Criminal
Charge. ........................................................................................................ 4

    B.    Count Ten Of The Superseding Indictment Is A Nullity
Because The Special Grand Jury Had No Jurisdiction To
Return The Charge. ...................................................................................... 5

POINT II    TWO UNAMBIGUOUS CONSTITUTIONAL VENUE
PROVISIONS, AND THE COEXISTING FEDERAL
RULE, MANDATE THAT THE TRIAL OF THE FALSE
STATEMENT CHARGES AGAINST VAUGHN BE HELD
ONLY IN THE VENUE WHERE THE STATEMENTS
WERE MADE, THE MIDDLE DISTRICT OF
TENNESSEE........................................................................................................ 9

    A.    The Constitution, In Its Original Text And As Interpreted
By The Supreme Court, Emphasizes The Guarantee Of
Trying A Criminal Defendant In The Appropriate Venue........................ 10

    B.    Under 18 U.S.C. §1001, The Essential Conduct Element
In Vaughn's Nashville Deposition Consisted Of His
Oral Statements Made In Response To Questions From
The IRS Examiners. ................................................................................... 13

POINT III   THIS COURT HAS THE AUTHORITY TO DETERMINE,
IN ADVANCE OF ANY TRIAL, THE FACTUAL AND
LEGAL BASIS UPON WHICH COUNT TEN PURPORTS
TO SATISFY CONSTITUTIONAL AND STATUTORY
VENUE REQUIREMENTS.................................................................................20

    A.    Rule 12(b)(2) Of The Federal Rules Of Criminal Procedure
Authorizes This Pretrial Challenge To The Government's
Legally And Factually Unsupportable Allegation That
Venue For Count Ten Is In The Southern District Of New
York............................................................................................................. 20

## TABLE OF CONTENTS (cont'd)

B.    The Constitution Itself Contemplates That A Defendant Will Be Permitted To Test The Sufficiency Of Venue Before He Is Required To Stand Trial In An Improper Venue. ........................................................................................... 24

POINT IV    THE COURT SHOULD TRANSFER THE COUNTS AGAINST VAUGHN IN THE SUPERSEDING INDICTMENT TO THE MIDDLE DISTRICT OF TENNESSEE PURSUANT TO RULE 21(B) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE................................26

POINT V    THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE VAUGHN WITH THE PARTICULARS HE HAS REQUESTED........................................................................................39

A.    The Particulars With Respect To The Venue For Count Ten. ........................................................................................... 39

B.    The Particulars With Respect To The Charges In Count Two Through Four. ..................................................................... 40

POINT VI    THE COURT SHOULD, PURSUANT TO BRADY V. MARYLAND, ORDER THE DISCLOSURE OF MATERIALS THAT POTENTIALLY REVEAL A VIOLATION OF 26 U.S.C. §6103 BY THE IRS OR DOJ....................41

CONCLUSION    COUNT TEN OF THE SUPERSEDING INDICTMENT SHOULD BE DISMISSED; IN THE ALTERNATIVE, THE VENUE FOR COUNT TEN AND THE ENTIRETY OF THIS PROCEEDING SHOULD BE TRANSFERRED TO THE MIDDLE DISTRICT OF TENNESSEE; TOGETHER WITH AN ORDER DIRECTING THAT THE ADDITIONAL RELIEF REQUESTED IN THE NOTICE OF OMNIBUS PRETRIAL MOTION BE GRANTED .......................43

APPENDIX A

APPENDIX B

# TABLE OF AUTHORITIES

## CASES

Application of Radio Corporation of America, 13 F.R.D. 167 (S.D.N.Y. 1952)) ............................................................................................................... 4

Blair v. United States, 250 U.S. 273 (1919) ................................................... 4

Brady v. Maryland, 373 U.S. 83 (1963) ...................................................... 2, 42

Costello v. United States, 350 U.S. 359, 408-409 (1956) ............................... 3

Hale v. Henkel, 201 U.S. 43 (1904) ............................................................... 4

In Re Grand Jury Investigation of Shipping Industry, 186 F. Supp. 298 (D.C.D.C. 1960) ........................................................................................... 4

In re Mills, 135 U.S. 263 (1890) .................................................................... 5

Kepner v. United States, 195 U.S. 100 (1904) ............................................. 38

Kyles v. Whitley, 514 U.S. 419 (1995) .......................................................... 42

Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379 (1884) ........................... 3

Platt v. Minnesota Mining & Manufacturing  Company, 376 U .S. 240 (1964) ................................................ 26, 29, 30, 31, 32, 34, 35, 38

Salinger v. Loisel, 265 U.S. 224 (1924) ......................................................... 4

Securities and Exchange Commission v. ESM Government Securities, Inc., 645 F.2d 310, (5th Cir.1981) ..................................................................... 42

Steel Co. v. Citizens For a Better Environment, 523 U.S. 83 (1998) ........... 3

Travis v. United States, 364 U.S. 631(1961) ......................................... 11, 16

United States v.  Beech-Nut Nutrition Corp., 871 F.2d 1181 2d Cir. 1989) ...... 11, 13

United States v. Alfonso, 143 F.3d 772 (2d Cir. 1998) ................................. 20

United States v. Alter, 81 F.R.D. 524 (S.D.N.Y. 1979) ................................ 31

United States v. Anderson, 328 U.S. 699 (1946) .......................................... 13

United States v. Aronoff, 463 F.Supp. 454 (S.D.N.Y. 1978) .................. 32, 37

United States v. Bagley, 473 U.S. 667 (1985) .............................................. 42

United States v. Bellomo, 263 F. Supp. 2d 561 (E.D.N.Y. 2003) ............... 22

United States v. Bernard Kerik, 07 Cr. 1027 (SCR) .................................... 14

United States v. Bin Laden, 146 F. Supp. 2d 373 (S.D.N.Y. 2001) ...... 15, 16, 17, 19

United States v. Bozza, 365 F.2d 206 (2d Cir. 1966) ............................. 13, 16

United States v. Brennan, 183 F.3d 139 (2d Cir. 1999) ............... 12, 13, 16, 19

## TABLE OF AUTHORITIES (cont'd)

United States v. Busic, 549 F.2d 252 (2d Cir. 1977) .............................................. 12, 16

United States v. Cabrales, 524 U.S. 1(1998) ............................................. 10, 11, 14, 23

United States v. Calderon, 243 F.3d 587 (2d Cir. 2001) ............................................. 3

United States v. Candella, 487 F.2d 1223 (2d Cir. 1973) ............................................. 18

United States v. Carriles, 486 F.Supp.2d 599 (W.D. Tex. 2007) ............................... 42

United States v. Castellano, 610 F. Supp. 1359 (S.D.N.Y. 1985) ............................... 22

United States v. Chemical Bank, 593 F.2d 451 (2d Cir. 1958) .................................... 41

United States v. Chestnut, 533 F.2d 40(2d Cir. 1976) .................................... 14

United States v. Clark, 360 F. Supp. 936 (S.D.N.Y. 1973) ........................................ 37

United States v. Cores, 356 U.S. 405 (1958) ........................................ 12, 13

United States v. Craft, 105 F.3d 1123 (6th Cir. 1997) ........................................ 22, 23

United States v. Fein, 370 F. Supp. 466 (E.D.N.Y.), aff'd., 504 F.2d 1170 (2d
      Cir. 1974) ........................................................................... 5, 7, 8, 9

United States v. Flaxman, 304 F. Supp. 1301 n.5 (S.D.N.Y. 1969) ..................... 11, 12

United States v. Glaze, 313 F.2d 757 (2d Cir. 1963) ........................................ 39

United States v. Gruberg, 493 F. Supp. 234 (D.C.N.Y. 1979) .................................... 34

United States v. Hall, 20 F.3d 1084 (10th Cir. 1994) .................................... 20

United States v. Hanley, 1995 WL 60019 (S.D.N.Y. 1995) .................................... 28, 31

United States v. Hart-Williams, 967 F.2d 73 (E.D.N.Y. 1997) .................................... 21

United States v. Johnson, 123 F.2d 111(7th Cir. 1941), rev'd on other grounds,
      319 U.S. 503 (1943) ........................................... 5, 7, 12, 18, 19, 24, 26

United States v. Kaytso, 868 F.2d 1020 (9th Cir. 1988) .................................... 21

United States v. King, 200 F.3d 1207 (9th Cir. 1999) ........................................ 11, 41

United States v. Knight, 822 F.Supp. 1071 (S.D.N.Y. 1993) .................................... 36

United States v. Layne, 2005 WL 1009765 (S.D.N.Y. 2005) .................................... 27, 32

United States v. Levin, 973 F.2d 463 (6th Cir. 1992) .................................... 20

United States v. Macklin, 523 F.2d 193 (2d Cir. 1975) ........................................ 5, 8

United States v. Maldonado-Rivera, 922 F.2d 934 (2nd Cir. 1990) ........................... 27

United States v. Martino, 2000 WL 1843233 (S.D.N.Y. 2000) ........................... 27, 28

United States v. McKay, 45 F. Supp. 1007(E.D. Mich. 1942) .................................... 5

United States v. Novak, 443 F.3d 150 (2d Cir. 2006) .................................... 11

United States v. Ohran, 2000 WL 620217 (S.D.N.Y. 2000) .................................... 27, 34

# TABLE OF AUTHORITIES (cont'd)

United States v. Olen, 183 F. Supp. 212 (S.D.N.Y. 1960) ........................................................ 32

United States v. Palma-Ruedas, 121 F.3d 841 (3rd Cir. 1997) .................................................. 24

United States v. Panza, 750 F.2d 1141 (2d Cir. 1984) ............................................................. 39

United States v. Phillips, 367 F.3d 846 (9th Cir. 2004) ........................................................... 20

United States v. Pirro, 96 F. Supp. 2d 279 (S.D.N.Y. 1999) aff'd., 210 F.3d 356
    (2d Cir. 2000) .................................................................................................................... 21

United States v. Ramirez, 420 F.3d 134 (2d Cir. 2005) ........................................................... 18

United States v. Reed, 773 F.2d 477 (2d Cir. 1985) ......................................................... 17, 22, 23

United States v. Risk, 843 F.2d 1059 (7th Cir. 1988) .............................................................. 20

United States v. Rodriguez, 465 F.2d 5 (2d Cir. 1972) ..................................................... 12, 14, 24

United States v. Rodriguez-Moreno, 526 U.S. 277 (1999) ...................................................... 14, 24

United States v. Rommy, 506 F.3d 108 (2d Cir. 2007) ............................................................. 21

United States v. Ruelas-Arreguin, 219 F.3d 1056 n.1 (9th Cir. 2000) ........................................ 25

United States v. Russell, 582 F.Supp. 660 (D.C.N.Y. 1984) ............................ 26, 27, 28, 30, 33

United States v. Stein, 429 F. Supp. 633 (S.D.N.Y. 2006) ...................................................... 22, 42

United States v. Stephenson, 895 F.2d 867 (2nd Cir. 1990) ...................................................... 27

United States v. Svoboda, 347 F.3d 471 (2d Cir. 2003) ........................................................... 21

United States v. Torres, 901 F.2d 205 (2d Cir. 1990) .............................................................. 39

United States v. Valdes, 2006 WL 738403 (S.D.N.Y. 2006) .......................... 27, 28, 31, 32, 40

United States v. Valle, 16 F.R.D. 519 (S.D.N.Y. 1955) ........................................................... 22

United States v. Walsh, 194 F.3d 37 (2d Cir. 1999) ............................................................... 39

United States v. Yakou, 428 F.3d 241 (D.C. Cir. 2005) ........................................................... 20

United States v. Zeuli, 137 F.2d 845 (2d Cir. 1943) ............................................................... 13

Wong Tai v. United States, 273 U.S. 77 (1927) ...................................................................... 39

## STATUTES

18 U.S.C §3237 (a) ........................................................................................................... 15

18 U.S.C. §1341 ............................................................................................................... 16

18 U.S.C. §1503 ............................................................................................................... 22

18 U.S.C. §1623 ............................................................................................................... 22

18 U.S.C. §3231 ................................................................................................................. 3

18 U.S.C. §3237 ................................................................................................. 15, 16, 18, 19

18 U.S.C. §3331 ................................................................................................................. 6, 8

## TABLE OF AUTHORITIES (cont'd)

18 U.S.C. §3332(a) ................................................................................................... 6, 8

18 U.S.C. §3333 ........................................................................................................ 6

26 U.S.C. §§7213(a)(1) ............................................................................................. 41

26 U.S.C. §7213A(b)(1) ............................................................................................ 41

## OTHER AUTHORITIES

Black's Law Dictionary (8th ed. 2004) ................................................................... 25

The New Oxford American Dictionary (2d ed. 2005) ............................................. 25

United States Department of Justice, United States Attorneys' Manual: False
   Statements and Venue § 9-918 (1997 .............................................................. 36

## RULES

Rule 12(b)(2) ......................................................................................................... 20, 24

Rule 21(b), Fed. R. Crim. P ................................................................. 1, 25, 26, 34, 37

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. III, §2 ............................................................................................ 25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

UNITED STATES OF AMERICA,

    - v. -

ROBERT COPLAN,                    (S-1) 07 Cr. 453 (SHS)
MARTIN NISSENBAUM,
RICHARD SHAPIRO,
BRIAN VAUGHN,
DAVID SMITH, and
CHARLES BOLTON,

              Defendants.

------------------------------------ X

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT VAUGHN'S
## OMNIBUS PRETRIAL MOTION

      This Memorandum of Law is submitted in support of the defendant Brian Vaughn's

Omnibus Pretrial Motion which seeks dismissal of Count Ten of the Superseding

Indictment, or in the alternative, its transfer to the Middle District of Tennessee with the

other charges against him. Those requests for relief involve challenges, on Constitutional

grounds, to the authority of the Special Grand Jury to bring the false statement charge

against Vaughn in Count Ten, as well as the Government's designation in the Superseding

Indictment of the Southern District of New York as the venue for the trial of that charge,

which we believe is appropriately challenged at this stage. These issues are addressed in

Points I, II and III of this Memorandum.

      We also seek to invoke the Court's discretionary authority, under 21(b), Fed. R. Crim.

P., for a transfer of this proceeding against Vaughn to the Middle District of Tennessee.

Point IV addresses that argument. The relief which we seek with respect to matters involving particulars and a specific discovery request under Brady v. Maryland, 373 U.S. 83 (1963), which we wish to focus on specifically, apart from the arguments advanced in the Memoranda which are to be contemporaneously submitted jointly on behalf of all defendants, is addressed in Points V and VI.

The Court is respectfully referred to the accompanying declarations of James B. Tucker and Peter H. Barrett, and the annexed exhibits, which contain complete statements of the facts pertaining to these motions. The Barrett Declaration relates specifically to the Rule 21(a) request for a change of venue.  References herein to these declarations will be "Tucker Dec." or "Barrett Dec.," as appropriate.

## POINT I

### THE SOUTHERN DISTRICT OF NEW YORK SPECIAL GRAND JURY HAD NO LEGAL AUTHORITY TO INDICT VAUGHN FOR FALSE STATEMENTS MADE IN NASHVILLE, TENNESSEE; THAT ABSENCE OF CONSTITUTIVE AUTHORITY THEREFORE DEPRIVES THE COURT OF JURISDICTION TO HEAR THE CHARGE IN COUNT TEN, WHICH SHOULD BE DISMISSED

The charge in Count Ten of the Superseding Indictment alleges that Brian Vaughn provided a number of false statements when the IRS took his deposition in June, 2002.  As a matter of uncontrovertible fact, that deposition took place in an office building located in Nashville, Tennessee.  See Tucker Dec. at ¶4.  The Special Grand Jury which returned that charge, however, was limited by statute to the investigation and indictment of crimes which had been committed within the Southern District of New York, the district in which it was impaneled.

For the reasons that follow, we maintain that the August, 2006 Special Grand Jury could not lawfully charge Vaughn for the offense of false statements under 18 U.S.C. §1001 because they were not committed in the district of the Special Grand Jury's impanelment, the Southern District of New York.   This is an objection which goes to the lawfulness of the charge in Count Ten and is not a mere defect in the proceedings of the Grand Jury. See, e.g., Costello v. United States, 350 U.S. 359, 408-409 (1956) ("An indictment returned by a legally constituted and unbiased grand jury . . . is enough to call for trial of the charge on its merits").   This is also a matter quite apart from the right of a defendant to be tried in the correct venue, an issue which we separately address in Point II, infra. It involves the jurisdiction of the grand jury and its power, by indictment, to confer jurisdiction in the district court to hear the charges pursuant to 18 U.S.C. §3231.[1/]   We maintain that the charge in Count Ten is a legal nullity.

_____

[1/]   18 U.S.C. §3231, provides, in pertinent part:

> The district courts of the United States shall have original
> jurisdiction, exclusive of the courts of the States, of all offenses
> against the laws of the United States.

"[J]urisdictional errors . . . affect the basic authority of a court to hear and decide a case." United States v. Calderon, 243 F.3d 587, 590 (2d Cir. 2001). The Court in Steel Co. v. Citizens For a Better Environment, 523 U.S. 83, 94-95 (1998) stated:  "The requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception,' " (quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884)); for "[j]urisdiction is power to declare the law," and " '[w]ithout jurisdiction the court cannot proceed at all in any cause.' "

### A.    A Grand Jury Must Have Jurisdiction To Bring A Criminal Charge.

It has never been supposed that a grand jury could indict for a crime which was committed outside its jurisdiction, nor that a court could try such a case. As stated by the Court in <u>Salinger</u> v. <u>Loisel</u>, 265 U.S. 224, 228 (1924), "under the Sixth Amendment to the Constitution the accused cannot be tried in one district on an indictment showing that the offense was not committed in that district." This, as the <u>Loisel</u> Court observed, is an objection which also goes "to the jurisdiction of the Court before which it is proposed to take and try the accused."  <u>Id</u>. at 232.

The idea that the scope of a grand jury's power to indict should be, and is confined by the limits of its own geographical jurisdiction, is deeply rooted in our Nation's jurisprudence.  The Court in <u>Hale</u> v. <u>Henkel</u>, 201 U.S. 43, 62 (1904), quoted the 1791 remarks of Judge Addison, the president of the court of common pleas, that the grand jury can properly inquire of witnesses before it of what they may "know of any offense <u>committed in the county</u>, . . . " (emphasis added).  In <u>Blair</u> v. <u>United States</u>, 250 U.S. 273, 282 (1919), the Court implicitly recognized that grand juries have jurisdictional limitations, stating that  "witnesses are not entitled to take exception to the jurisdiction of the grand jury . . . ." <u>See</u> <u>also</u> <u>Application of Radio Corporation of America</u>, 13 F.R.D. 167, 170 (S.D.N.Y. 1952) (Weinfeld, <i>J.</i>) (a witness may not "raise any issue as to the jurisdiction of the Grand Jury . . . over the subject matter that is under inquiry.");  <u>In Re</u> <u>Grand Jury Investigation of Shipping Industry</u>, 186 F. Supp. 298, 304 (D.C.D.C. 1960) (prior to indictment, grand jury "jurisdictional issues are premature.").

The jurisdiction of Federal grand juries is derived from statute, see In re Mills, 135 U.S. 263, 267 (1890) ("A grand jury, by which presentments or indictments may be made for offenses against the United States is a creature of statute"); United States v. Macklin, 523 F.2d 193, 195 (2d Cir. 1975) ("[I]t has long been the rule that the grand jury is a creature of Statute") and, as such, "there is no such thing as a de facto Grand Jury in a Federal Court . . ." United States v. Johnson, 123 F.2d 111, 120 (7th Cir. 1941), rev'd on other grounds, 319 U.S. 503 (1943). Because the authority of a grand jury to act is dependent upon the statute which created it, "unless that authority is complied with there is no jurisdiction to return an indictment." United States v. McKay, 45 F. Supp. 1007, 1015 (E.D. Mich. 1942).

The Superseding Indictment in this prosecution was returned by a statutory special grand jury, and its limitation to indict only crimes committed "within" its district of impanelment was clearly set forth by statute. Therefore, this motion, which questions the authority of the August 2006, Special Grand Jury to return an indictment charging Vaughn based upon allegedly false statements made in Nashville, Tennessee, is "an objection that goes to jurisdiction[,]" and is properly made pursuant to Rule 12(b)(3) because it alleges a "defect in the indictment [that] fails to invoke the court's jurisdiction . . ." See, e.g., United States v. Fein, 370 F. Supp. 466, 469 (E.D.N.Y.) (Dooling, J.), aff'd., 504 F.2d 1170 (2d Cir. 1974).

### B. Count Ten Of The Superseding Indictment Is A Nullity Because The Special Grand Jury Had No Jurisdiction To Return The Charge.

The orders impaneling and extending the term of the Special Grand Jury which returned the original and Superseding Indictments in this prosecution explicitly state that the

August 2006 Special Grand Jury was impaneled and extended pursuant to 18 U.S.C. §3331

("Summoning and term"). <u>See</u> Exhibits E and F, Tucker Dec. Under 18 U.S.C. §3332(a)

("Powers and duties"), the mandate of an impaneled special grand jury is to "inquire into

offenses . . . alleged to have been <u>committed within that district</u>." (emphasis added). [2/]

There is simply no basis to conclude that 18 U.S.C. §3332(a) authorizes a special

grand jury, summoned for service in the Southern District of New York, to return an

indictment which includes a crime that was committed outside the district. Indeed, the

language of the statute is precisely the opposite in its carefully phrased limitation of the

grand jury's investigatory power to crimes "committed within that district." The word

"committed," as applied to the false statement specifications in Count Ten, does not allow

the fiction that Vaughn's answers to questions posed in an office in Nashville, Tennessee,

constituted an offense committed in the Southern District of New York. <u>See</u> discussion,

<u>infra</u>, Point II at p. 9.

---

[2/] 18 U.S.C. §3332(a) provides, in pertinent part:

> (a)  It shall be the duty of each such grand jury impaneled within
> any judicial district to inquire into offenses against the criminal laws
> of the United States alleged to have been committed within that
> district. . . .

Special Grand Juries are convened, pursuant to §3331, only in judicial districts which
contain more than four million people or in situations in which the Attorney General, or
other authorized Department of Justice official, certifies to the chief judge of the district that
"a special grand jury is necessary because of criminal activity in the district . . . ." Its term of
service is 18 months, unless discharged earlier, and it can be extended for as long as 18 more
months, during which time it is authorized to indict, or longer in the event that it needs time
to issue a "report," as provided for in 18 U.S.C. §3333. Pursuant to §3332(b), an additional
special grand jury may be impaneled in a district in which "the volume of business of the
special grand jury exceeds [its] capacity to discharge its obligations."

The implications arising from the conduct of a grand jury beyond its statutory grant of authority were made clear by the court in United States v. Fein, 504 F.2d 1170, 1180 (2d Cir. 1974). Fein was a case which involved the validity of an indictment returned by a Rule 6(a) grand jury one month after its 18-month statutory term had expired, although within an extension ordered by the chief judge of the district. The issue was whether such an indictment had any validity given that the grand jury had returned it after its term had expired.[3/] The Court said it did not. Following an exhaustive survey of the case and statutory authority, and applying the rationale expressed in United States v. Johnson, 319 U.S. 503 (1943), the Court stated:

> In our view, the fair reading of the Court's opinion in *Johnson* is that the Court accepted the conclusion of all the circuit judges below that an indictment returned by a grand jury sitting beyond its legally authorized time is a nullity. This acceptance is reflected throughout the opinion and is also made explicit.
>
> \* \* \* \* \* \*
>
> In light of the statutory history and the cases construing antecedent legislation, we can only conclude that the Congress, by imposing restrictions on the life of the grand jury, clearly intended that indictments filed thereafter are void. What other purpose could there be in establishing the limitation if the grand jury were permitted to continue its business despite its statutorily mandated demise?

Fein, at 1177 and 1178.

---

[3/]  Rule 6(g), Fed. R. Crim. P., currently provides that a regular grand jury can serve for as long as 18 months, plus a 6-month extension.  At the time Fein was decided, the limit was 18 months.

Judge Mulligan, writing for the Court of Appeals in <u>Fein</u>, further observed with respect to the §3331 special grand jury: "It seems evident from the face of the statute, that it was the intent of Congress in enacting the Organized Crime Control Act to provide for a distinctive type of grand jury. The special grand juries created by the Act are limited to districts in which organized crime was deemed most prevalent . . . ." <u>Fein</u>, 504 F.2d at 1180. One of those distinctive features is its emphasis and explicit requirement that the scope of inquiry be of offenses "committed within" the district of its impanelment.  The "committed within" phrase in §3332(a) synchronizes with the phrase "criminal activity in the district" in §3331(a), <u>see</u> fn. 2, <u>supra</u>, so that there is a coterminous bond between the authority to create the Special Grand Jury and the authority of the Special Grand Jury to indict.

Clearly, Congress intended that indictments charging crimes committed outside of the Special Grand Jury's jurisdiction "are void." <u>Fein</u>, at 1178. To paraphrase the rhetorical question posed in <u>Fein</u>, what other purpose would there be in establishing that a grand jury was limited to indicting for crimes committed within its district if it were permitted to indict despite its statutorily mandated restriction? <u>Id</u>.

In holding that the indictment against <u>Fein</u> had to be dismissed, and indictments against several others who had also been charged after the statutory term of the special grand jury had expired, Judge Mulligan wrote: "It is fundamental to our jurisprudence that the rule of law must prevail and that the prosecution of those suspected of crime must itself proceed according to the law, and not otherwise." <u>Id</u>. at 1181.  <u>See also</u> <u>Macklin</u>, 523 F.2d at 195 (indictment handed down by a grand jury after the expiration of its term a "nullity").

Count Ten of the Superseding Indictment suffers from the same type of nullifying defect which required the dismissal of the indictment in <u>Fein</u> and can only be remedied, as in <u>Fein</u>, by a dismissal. Count Ten represents the exercise of a power and authority which the August, 2006 Special Grand Jury did not have under the statute and it is a defect which deprives the Court of the jurisdiction to hear the charges. In the case of <u>Fein</u>, the defect involved the authority of the Grand Jury to act outside its term. Here, the lack of authority is a matter of geography; one involves time, the other space. In each case, however, the defect involves the core of the Grand Jury's constituted legal authority to act.

### POINT II

### TWO UNAMBIGUOUS CONSTITUTIONAL VENUE PROVISIONS, AND THE COEXISTING FEDERAL RULE, MANDATE THAT THE TRIAL OF THE FALSE STATEMENT CHARGES AGAINST VAUGHN BE HELD ONLY IN THE VENUE WHERE THE STATEMENTS WERE MADE, THE MIDDLE DISTRICT OF TENNESSEE

Count Ten of the Superseding Indictment charges Brian Vaughn with having made a series of false statements during an "examination" with IRS officials who were investigating various tax strategies marketed by Ernst & Young. <u>See</u> Exhibit A to Tucker Dec., Superseding Indictment, ¶¶132-33. The Government, however, in pursuit of a strategy to have Vaughn stand trial on those charges in the Southern District of New York, obscures a critical fact surrounding the alleged false statements: they were all made in Nashville, Tennessee, the site of Vaughn's face-to-face examination with IRS attorneys.[4] Count Ten's

---

[4]   The transcript of the IRS examination states that the examination took place "at 810 Broadway, Suite 400, Nashville, Tennessee on June 12, 2002 . . . ." <u>See</u> Exhibit D to Tucker

. . . / . . .

elision of that critical fact is reflected in the allegation that Vaughn violated 18 U.S.C. §1001, "in the Southern District of New York and elsewhere."  Superseding Indictment, ¶133.[5]/ While "elsewhere" may accurately include Nashville, its venue-fixing assertion, "in the Southern District of New York," is a misleading allegation and is designed to force Vaughn to stand trial here in clear violation of constitutional, statutory and case law.

### A.     The Constitution, In Its Original Text And As Interpreted By The Supreme Court, Emphasizes The Guarantee Of Trying A Criminal Defendant In The Appropriate Venue.

A criminal defendant's right to venue is enshrined in not one but two places in the United States Constitution.  Article III, sec. 2, cl. 3 of the Constitution, requires that "The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." The Sixth Amendment, in turn, provides that, "In all criminal prosecutions, the accused shall enjoy the right to a[n] . . . impartial jury of the State and district wherein the crime shall have been committed . . ."  U.S. Const. amend. VI. See also, United States v. Cabrales, 524 U.S. 1, 6 (1998) ("The Constitution twice safeguards the defendant's venue

---

. . . *footnote continued*

Dec., Vaughn Tr. 3:3-4, June 12, 2002.  Nashville, Tennessee is located in the Middle District of Tennessee.

[5]/   Count Ten, in pertinent part, alleges as follows in paragraph 133:

> On or about June 12, 2002, in the Southern District of New York and elsewhere, BRIAN VAUGHN, the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, unlawfully, willfully, and knowingly made materially false, fictitious and fraudulent statements and representations, to wit, in connection with an examination by the IRS of tax shelters marketed by Ernst & Young, VAUGHN gave the false testimony underlined below . . . . (Id.)

right: . . ."). Rule 18 of the Federal Rules of Criminal Procedure echoes the constitutional safeguards concerning venue and requires, in pertinent part, that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." [6]/

Justice Douglas succinctly stated in Travis v. United States, 364 U.S. 631, 634 (1961) (citation omitted), that "questions of venue are more than matters of procedure. 'They raise deep issues of public policy in the light of which legislation must be construed.' " Judge Tyler in United States v. Flaxman, 304 F. Supp. 1301, 1303 n.5 (S.D.N.Y. 1969), encapsulated and collected Supreme Court authority until that point in time, and which continues unchanged to this day, when he stated that "the Sixth Amendment has been repeatedly interpreted as providing a venue guarantee of trial in the State and district in which the crime was committed." Id. (citations omitted). The dual Constitutional emphasis by the Framers on venue in criminal matters was a reflection of the Nation's founder's deep concern which had its precursor in the Declaration of Independence. See Cabrales, 524 U.S. at 6 (the founders "complaints against the King of Great Britain, listed in the Declaration of Independence, included his transportation of colonists 'beyond Seas to be tried.' ") See also

---

[6]/    Settled law requires that venue must be proper as to each count in a criminal indictment. See United States v. Novak, 443 F.3d 150, 160-61 (2d Cir. 2006) ("An example of the strength of [the venue] protection is manifested in the principle that, when an indictment charges a defendant with multiple counts, 'venue must be proper with respect to each count.' ") (quoting United States v.  Beech-Nut Nutrition Corp., 871 F.2d 1181, 1188 2d Cir. 1989)).

United States v. Busic, 549 F.2d 252, 253 (2d Cir. 1977) (recounting from the Declaration, "the despised practice of 'transporting us beyond Seas to be tried for pretended offenses.' ").

Justice Frankfurter pointedly observed in the leading case of United States v. Johnson, 323 U.S. 273, 275 (1944), that the Framers were all too "[a]ware of the unfairness and hardship to which trial in an environment alien to the accused exposes him" and the inclusion of two venue provisions in the Constitution was intended "to underscore the importance of [these] safeguard[s]." (citations omitted). Justice Frankfurter went on in Johnson to pronounce a rule of constitutional construction that "[i]f an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it." Johnson, 323 U.S. at 276. Judge Tyler echoed that command in Flaxman when he stated that:

> [I]n approaching any particular piece of legislation, or a set of facts which must be analyzed by standards set out in a statutory scheme, the proper course for a court is to remain constantly faithful to the policies of the [Constitution] and [its] venue provisions and to consider the import of the statute and factual situation so as to give full scope to those fundamental policies.

Flaxman, 304 F. Supp. at 1303.[2/]

---

[2/] See also United States v. Cores, 356 U.S. 405, 407 (1958) ("The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place. Provided its language permits, the Act in question should be given that construction which will respect such considerations."); United States v. Brennan, 183 F.3d 139, 144, 147 (2d Cir. 1999) (reversing mail fraud conviction in Eastern District of New York on venue grounds where, at best, it was shown that mail "traveled through" the Eastern District and referring to other instances where convictions have been reversed for improper venue) (citing United States v. Rodriguez, 465 F.2d 5, 10-11 (2d Cir.

. . . / . . .

We submit that it is from this consistently reiterated constitutional perspective that the Court should determine whether statements made in Nashville, Tennessee, can also be considered to have been made in New York City for venue purposes. In order to make that determination, we submit, settled precedent requires that the Court ascertain the "essential conduct elements" of the offense charged which, in this case, is the making of a false statement in violation of 18 U.S.C. §1001.[8/]

### B.  Under 18 U.S.C. §1001, The Essential Conduct Element In Vaughn's Nashville Deposition Consisted Of His Oral Statements Made In Response To Questions From The IRS Examiners.

"The Constitution makes it clear that determination of proper venue in a criminal case requires determination of where the crime was committed." Cores, 356 U.S. at 407; see also Brennan, 183 F.3d at 144 ("In order to determine whether prosecution was proper in the Eastern District, we . . . must ascertain where the crimes with which [the defendants] were charged were 'committed.' "). Furthermore, "[w]hen a crime consists of a single noncontinuing act, it is 'committed' in the district where the act is performed." Beech-Nut at 1188 (citing United States v. Anderson, 328 U.S. 699, 703 (1946)). This is known as the crime's locus delicti, which, unless specified by statute, is determined by looking at (1) "the

---

. . . *footnote continued*

1972); United States v. Bozza, 365 F.2d 206, 220-22 (2d Cir. 1966) (Friendly, *J.*); United States v. Zeuli, 137 F.2d 845, 847 (2d Cir. 1943) (L. Hand, *J.*))

[8/]    In relevant part, 18 U.S.C. §1001(a)(2) states that whoever, "knowingly and willfully . . . makes any materially false, fictitious or fraudulent statement or representation." 18 U.S.C. §1001(a)(2). The only verb in 18 U.S.C. §1001(a)(2), which is employed in Count Ten is the past tense of "make," "made." See supra note 5.

conduct constituting the offence (the nature of the crime)" and (2) "the location of the commission of the criminal acts." United States v. Rodriguez-Moreno, 526 U.S. 277, 279 (1999) (citing Cabrales, at 6-7). In determining the crime's locus delicti, as the Court of Appeals stated in Brennan, 183 F.3d at 145, courts "look at 'the key verbs which define the criminal offense in the statute.' " (quoting United States v. Chestnut, 533 F.2d 40, 46-47 (2d Cir. 1976).

According to Count Ten of the Superseding Indictment, Vaughn is alleged to have violated 18 U.S.C. §1001 when he "made" and "gave false testimony during" an examination by the IRS of tax shelters marketed by Ernst & Young. See Superseding Indictment, ¶133. It is undisputed that the "examination" was nothing more than a face-to-face interview which took place entirely in Nashville, Tennessee. On that undisputed fact, the result should be obvious: venue is proper only in the Middle District of Tennessee, where the alleged false statements were made.

Given the clarity of the principle, it should therefore come as no surprise that courts in this circuit have had little opportunity to review such a farfetched attempt, as has been made here, by the Government to lay venue in the Southern District of New York; the Government has usually refrained from engaging in such charging legerdemain.[2/]  In the one

_____

[2/]   As discussed in counsel's supporting declaration, the Government's recent multi-count indictment in United States v. Bernard Kerik, 07 Cr. 1027 (SCR), a Southern District prosecution, contains two counts which charge Kerik with having made false statements – §1001 charges – in connection with the White House vetting process for the cabinet position of Secretary of the U.S. Department of Homeland Security. See Tucker Dec. at pp.5-6.   In each of the counts (Counts Fifteen and Sixteen) the false statement was made in Washington, D.C.  In Kerik, unlike in this prosecution, the Government correctly charged in

. . . / . . .

instance where the Government has tried to extend the scope of venue on similar facts, it has been decisively rebuffed.

In <u>United States</u> v. <u>Bin Laden</u>, 146 F. Supp. 2d 373 (S.D.N.Y. 2001) (Sand, *J.*), the Government charged Wadih El Hage, an alleged al-Qaeda member, with violating 18 U.S.C. §1001 for certain statements he had made to FBI agents during "two face-to-face interviews" conducted in Texas. <u>Id</u>. at 375. The Government sought to establish venue in the Southern District of New York by arguing that a violation of §1001 is a so-called "continuing offense" within the meaning of 18 U.S.C. §3237, and therefore could be prosecuted in multiple districts.[10/] Judge Sand rejected this theory with the astute observation that there was nothing "continuing" about a false statement made in Texas. As Judge Sand explained it,

> In each of those decisions [relied upon by the Government
> to support its continuing offense theory], the shared factual
> characteristic is that there existed a geographic discontinuity
> between the defendant's physical <u>making</u> of the disputed statement,
> whether oral or written, and the actual <u>receipt</u> of that statement by
> the relevant federal authority.

*    *    *    *    *

---

*. . . footnote continued*

those counts that the venue was "in the District of Columbia and elsewhere . . . ." <u>See</u> Exhibit G to Tucker Dec., Kerik Indictment, ¶ 45. In <u>Kerik</u>, the Government recognized that, in order to try those counts in the Southern District of New York, it was necessary to first secure the defendant Kerik's consent and waiver of his venue rights. <u>See</u> Exhibits H and I to Tucker Dec., transcripts of Nov. 9, 2007 and December 6, 2007.

[10/] 18 U.S.C §3237 (a) provides in relevant part that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." .

> In marked contrast, Mr. El Hage's allegedly false statements to the
> FBI were uttered and received wholly inside Texas.  Since there was
> no geographic (or even temporal) discontinuity, the offense charged
> in [the false statement count] began, continued, and was completed
> in just one federal judicial district – i.e., the Northern District of
> Texas. (emphasis in original)

Bin Laden, 146. F. Supp. 2d at 376-77 (citations omitted).

Of equal importance, settled Second Circuit authority reinforces the conclusion,

already compelled by Bin Laden, that there is no basis for applying 18 U.S.C. §3237, the

continuing offense statute, to Count Ten.  As the Court in United States v. Busic, stated:

> [S]ection 3237 requires an initial judicial inquiry into whether a
> particular crime involves a single act or movement. If the court
> determines, after considering the nature of the offense and the
> legislative and constitutional policies, that it requires only a single
> act, then the prosecution must proceed in the district where the
> crime was committed in toto; if the crime, however, involves a
> continuous course of conduct, the offense may be tried wherever it
> was "begun, continued or completed."

Busic,  549 F.2d at 259 (citation omitted).[11/]

The fact that the alleged false statements at issue in Bin Laden were "uttered and

received wholly inside" Texas, while those made by Vaughn were uttered and received

wholly inside Tennessee, is a distinction only insofar as Texas and Tennessee are different

---

[11/] This is fully consistent with Supreme Court authority:  "Multiple venue in general
requires crimes consisting of 'distinct parts' or involving 'a continuously moving act.' "
Travis, 364 U.S. at 636.  See also Bozza, 365 F.2d at 220 ("[T]he cases draw a distinction
between a continuing offense which is 'held, for venue purposes, to have been committed
wherever the wrongdoer roamed,' and a single act which occurs at one time and at one place
in which only it may be tried, although preparation for its commission may take place
elsewhere.' ") (citations omitted); Brennan, 183 F.3d at 149 ("To embrace the interpretation
of §§1341 and 3237(a) urged by the government would be to reach a result that the statutory
language does not command and that the policies of the Constitution counsel against.").

states.  Clearly, no "geographic discontinuity" exists where the alleged false statements are made during in-person interviews or at depositions.

Furthermore, the false statement at issue in Bin Laden was, like here, made in connection with a New York-based criminal investigation – a fact accorded almost no weight by Judge Sand in his venue analysis despite its inclusion as a factual allegation in the Bin Laden indictment.[12/]  The Government placed significant weight on that fact, particularly in support of its "secondary" "external effects" theory, arguing based on language in United States v. Reed, 773 F.2d 477 (2d Cir. 1985), that venue was proper in the Southern District of New York because the statements were made in connection with a criminal investigation based in that district.  Judge Sand, however, refused to sustain venue on that basis, emphasizing that, "[e]ven [if] Mr. El Hage's false statements to the FBI in Texas somehow impacted the investigation in the Southern District of New York," venue would not be proper there.  Bin Laden, 146 F. Supp. 2d at 377.  Judge Sand stated:

_____

[12/]  See United States v. Bin Laden, No. S(7) 98 Cr 1023 (LBS), Seventh Superseding Indictment ¶93 ("On or about August 20, 1998, in Dallas, Texas, and Arlington, Texas, the defendant WADIH EL HAGE . . . in a matter within the jurisdiction of the executive branch of the government, to wit, a criminal investigation based in the Southern District of New York, unlawfully, willfully and knowingly, did make materially false statements and representations . . . .) (emphasis added).  See Appendix A, Excerpt of Indictment in United States v. Bin Laden, No. S(7) 98 Cr. 1023 (LBS); see also Bin Laden, at 377 n.6 (noting that Mr. El Hage made his alleged false statements during an interview in Texas with the FBI "pursuant to [an] ongoing investigation" that "was based in the Southern District of New York.").  No better here, therefore,  is the circumstance here that the investigation of Ernst & Young's tax shelters may have been based in New York City or that the IRS summons which brought about his deposition was issued out of a New York City office of the IRS.  See Exhibit C to Tucker Dec.

> The elements of 18 U.S.C. §1001(a)(2), by contrast, do not include any requirement that there be proof of the false statement's effect, if any. Indeed, the standard charge concerning section 1001 explicitly cautions the jury that "it is not necessary for the government to prove that the government agency was, in fact, misled as a result of the defendant's action." 2 Leonard B. Sand et al., *Modern Federal Jury Instructions* ¶36.01, instr. 36-2.

Id. at 378.

It would be, we submit, unsustainable to argue that the crime of making a false statement in the course of a government investigation, particularly when that statement is made entirely within the confines of a single event and geographic location, "requires" anything but a "single act." Obviously, there is no "continuous course of conduct" involved here, and those false statement-venue cases in which the Court of Appeals has found the existence of such conduct are inapposite; not one involves a situation like Vaughn's.[13/]

Not only is such a conclusion mandated by a plain reading of the statutory text and a neutral examination of the undisputed facts, it is required by the Constitution and Supreme Court venue jurisprudence as well. Simply put, the Government cannot employ §3237 in an effort to try Vaughn in the Southern District of New York without (1) breaching the Constitution's two safeguards as to venue, and (2) doing violence to Johnson's teachings that

_____

[13/] See e.g., United States v. Ramirez, 420 F.3d 134, 142-43 (2d Cir. 2005) (false documents were filed in New Jersey and "ultimately forwarded . . . to [a federal agency] in Manhattan for processing"); United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990) (false statements "uttered" in District of Columbia over the telephone to a federal agent in New York, where they were deemed "received" or "filed"); United States v. Candella, 487 F.2d 1223, 1227-28 (2d Cir. 1973) ("false affidavits and bills of lading" were "prepared, executed, and handed to" city officials, who, in turn, "conveyed" them to an office building in Manhattan where they were "audited" by federal officials).

courts approach questions of venue with restraint. Johnson, 323 U.S. at 275, 278.[14]

Furthermore, to the extent that the Government seeks to establish venue in the Southern

District of New York by referring to some tenuous connection that the alleged false

statements at issue might have had with the Southern District of New York – for example,

that they were subsequently imported to the district for purposes of furthering a criminal

investigation – that argument was correctly rejected in Bin Laden, and is unsupportable

under the venue jurisprudence of the Supreme Court and the Second Circuit.

    If the constitutional "safeguards," Johnson, 323 U.S. at 275, concerning venue in

criminal matters are to have any continued meaning in today's world, they surely prohibit the

Government from setting up its investigative shop in a far-away and, from its perspective,

favorable district, and designating that district as the site of its criminal investigation, and

then seek to prosecute a criminal defendant there for alleged crimes committed elsewhere.

Yet that would be the precise strategy for the Government to employ in future prosecutions

if the Court were to find venue in the Southern District of New York based on such

nebulous and undeterminable circumstances as an oral statement's ultimate destination.

Nothing in the Constitution supports this, nor would the Framers have stood for it: the

Southern District of New York in venue analysis stands in no better position than did Great

Britain in the late 18th century.

_____

[14] Cf. Brennan, 183 F.3d at 148  (even going so far at to suggest that the application of
§3237 to the federal mail fraud statute "as currently written" may be "unconstitutional" but
declining to address "the issue of the limits on Congress's power to . . . redefine crimes [for
purposes of extending venue].") (citations omitted).

## POINT III

## THIS COURT HAS THE AUTHORITY TO DETERMINE, IN ADVANCE OF ANY TRIAL, THE FACTUAL AND LEGAL BASIS UPON WHICH COUNT TEN PURPORTS TO SATISFY CONSTITUTIONAL AND STATUTORY VENUE REQUIREMENTS

We submit that clear authority allows, and the Constitution's guarantee of proper venue endorses this Court's examination of the legal sufficiency of the Government's flawed venue allegation prior to trial where, as here, the correct legal determination of where venue lies is based upon undisputed facts.

### A.    Rule 12(b)(2) Of The Federal Rules Of Criminal Procedure Authorizes This Pretrial Challenge To The Government's Legally And Factually Unsupportable Allegation That Venue For Count Ten Is In The Southern District Of New York.

Rule 12(b)(2) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." (emphasis added).  "The general issue in a criminal trial," as the Second Circuit has observed, "is whether the defendant is guilty of the offense charged." United States v. Alfonso, 143 F.3d 772, 777 (2d Cir. 1998) (citation and internal quotation marks omitted).  Even when a Rule 12(b)(2) motion takes aim at a "general issue," however, courts will on occasion examine the merits of the motion before trial "where the material facts are undisputed and only an issue of law is presented."  United States v. Yakou, 428 F.3d 241, 247 (D.C. Cir. 2005) (citing United States v. Phillips, 367 F.3d 846, 855 & n.25 (9th Cir. 2004); United States v. Hall, 20 F.3d 1084, 1087-88 (10th Cir. 1994); United States v. Levin, 973 F.2d 463, 470 (6th Cir. 1992); United States v. Risk, 843 F.2d 1059, 1061 (7th Cir. 1988)).

Questions of venue are peculiarly legal in nature. See United States v. Svoboda, 347 F.3d 471, 482 (2d Cir. 2003) ("Questions of . . . venue are questions of law, and this Court reviews them de novo.") (citations omitted). Furthermore, as recently observed, "the venue requirement, despite its constitutional pedigree, is not an element of a crime . . . ." United States v. Rommy, 506 F.3d 108, 119 (2d Cir. 2007) (Raggi, J.) (emphasis in original). Cf. United States v. Hart-Williams, 967 F.2d 73, 76 (E.D.N.Y. 1997) ("Quite obviously, the 'failure to establish venue does not go to guilt or innocence.' ") (quoting United States v. Kaytso, 868 F.2d 1020, 1021 (9th Cir. 1988)). It follows then that a court's determination as to the proper venue for a count of an indictment does not touch upon the "general issue" of a trial, i.e., guilt or innocence for the offense(s) charged, and "can be determined" in a Rule 12(b)(2) motion prior to trial.

It is undisputed that Vaughn made the statements in Tennessee. The allegation in the Superseding Indictment that Vaughn violated 18 U.S.C. §1001, "in the Southern District of New York and elsewhere," is therefore a legal conclusion, which, without question, can be tested by this court for sufficiency under federal venue jurisprudence without implicating the "general issue." Cf. United States v. Pirro, 96 F. Supp. 2d 279 (S.D.N.Y. 1999) (legal insufficiency on face of count) aff'd., 210 F.3d 356  (2d Cir. 2000) (Table). As the Sixth Circuit has stated in addressing an analogous situation involving a pretrial Rule 12(b)(2) statute of limitations challenge:

> [T]he statute of limitations question is one that should be separated
> from the merits of the underlying conspiracy charge. Here, the facts
> relating to the disposition of the statute of limitations issue are stated in
> the indictment or constitute preliminary facts easily isolated from the
> issues on the merits. These facts are essentially undisputed and raise a
> legal issue, not a factual one.

United States v. Craft, 105 F.3d 1123, 1126 (6th Cir. 1997).[15]

Indeed, the court in United States v. Reed, 601 F. Supp. 685, 720-36 (S.D.N.Y.), rev'd on substantive grounds, 773 F.2d 477 (2d Cir. 1985), endorsed this principle, albeit implicitly, when it dismissed an indictment for lack of venue prior to trial. The defendant there was indicted on several charges including perjury under 18 U.S.C. §1623, in which he was alleged to have made " 'false material declarations' " in a deposition conducted in San Francisco, California, and obstruction of justice under 18 U.S.C. §1503, in which he was alleged to have created and used fraudulent documents where it was "undisputed" that none of those documents "were made in New York"; yet the indictment, like the one here, alleged that, for venue purposes, "the crimes were committed 'in the Southern District of New York and elsewhere.' " Id. at 720. Notably, District Judge Ward proceeded to analyze venue without even a single mention of whether he might have been prevented from doing so on the basis of the Government's conclusory allegation as to venue; it was clear to him that the allegation seeking to fix venue "in the Southern District of New York," was one of law, not fact.[16] Nor, significantly, did the Court of Appeals, in reviewing the district court's decision,

---

[15] For these reasons, we submit that cases which have construed venue-fixing allegations as factual rather than legal allegations as a basis for dismissing pretrial venue challenges are inapplicable to the present matter and therefore should not be followed. See, e.g., United States v. Stein, 429 F. Supp. 633, 643 (S.D.N.Y. 2006); United States v. Bellomo, 263 F. Supp. 2d 561, 579 (E.D.N.Y. 2003); United States v. Castellano, 610 F. Supp. 1359, 1388 (S.D.N.Y. 1985); United States v. Valle, 16 F.R.D. 519, 521-22 (S.D.N.Y. 1955)).

[16] It should be noted that the Government in Reed raised no objection to the court's consideration of the venue issue – at least none that was addressed by either Judge Ward or the Court of Appeals – and indeed, appeared to consent to the pretrial disposition of the

. . . / . . .

quarrel with Judge Ward's approach. Much like <u>Reed</u>, the question of venue here is one in which the facts as to venue are not subject to dispute and the single legal issue is therefore fully amenable to the court for its determination prior to trial.[17]

Even if some factual determinations are required in deciding the present motion – we submit there are none – that still does not prevent the Court from reaching a decision as to proper venue prior to trial. As the Sixth Circuit has astutely noted, "[d]istrict courts may ordinarily make preliminary findings of fact necessary to decide questions of law presented by [Rule 12(b)(2)] pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder." <u>Craft</u>, 105 F.3d at 1126. <u>See also</u> Rule 12, Fed. R. Crim. P. advisory committee notes (1944) ("[This rule] vests the court with authority to determine issues of fact in such manner as the court deems appropriate."). Moreover, some

_____

. . . *footnote continued*

matter. <u>See</u> <u>id.</u> at 695 (setting forth the Government's arguments); <u>cf</u>. <u>Reed</u>, 773 F.2d at 479 (recounting background of case).

[17]  The <u>Cabrales</u> case in the Supreme Court represents another example of a pretrial dismissal of charges for improper venue despite the existence of a similar venue-fixing allegation. <u>See</u> Indictment, <u>United States</u> v. <u>Cabrales</u>, No. 95-04022-01-CR-C-5 (W.D. Mo. 1995), <u>reprinted in</u> United States of America, Petitioner, Petition for a Writ of Certiorari app. at 17a-20a, 524 U.S. 1 (1998) (No. 97-643).). Reproduced in attached Appendix B. There the district court, on the recommendation of a magistrate judge, dismissed the two counts which the defendant had challenged for improper venue (opinion unreported). The Government then took an interlocutory appeal to the circuit which affirmed the lower court's decision. The Supreme Court affirmed as well. <u>See</u> <u>United States</u> v. <u>Cabrales</u>, 109 F.3d 471, <u>as</u> <u>amended</u>, 115 F.3d 621 (8th Cir. 1997), <u>aff'd</u>, 524 U.S. at 1. <u>Cabrales</u>, incidentally, involved money laundering charges in which crime from which the illegally laundered proceeds had been derived had been committed in Missouri, but where the <u>locus delicti</u> of the money laundering offense was in Florida. The Government's claim of proper venue in Missouri was rejected in <u>Cabrales</u>.

issues other than improper venue which, according to the advisory committee notes, fall squarely within the realm of Rule 12(b)(2),[18/] clearly require courts to engage in some factual determinations if they are to be decided in a timely manner consistent with a defendant's constitutional rights.

### B.   The Constitution Itself Contemplates That A Defendant Will Be Permitted To Test The Sufficiency Of Venue Before He Is Required To Stand Trial In An Improper Venue.

It cannot be emphasized enough that the Framers inserted the venue provisions into the Constitution as "safeguards" to protect a defendant against the "unfairness and hardship to which trial in an environment alien to the accused exposes him." Johnson, 323 U.S. at 275. See also United States v. Palma-Ruedas, 121 F.3d 841, 861 (3rd Cir. 1997) (Alito, J., dissenting) ("[T]he origin of these constitutional [venue] provisions shows that they were adopted to achieve important substantive ends – primarily to deter governmental abuses of power.") (citation omitted), rev'd, Rodriguez-Moreno, 526 U.S. at 277. Indeed, the plain text of the Constitution requires nothing less than outright dismissal, prior to trial, of any charge that is not actually supported by facts establishing proper venue.[19/] Nowhere in the two

---

[18/]   They "include such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity, lack of jurisdiction, failure of an indictment or information to state an offense, etc." Rule 12(b)(2), Fed. R. Crim. P., advisory committee's notes (1944). It is important to note that this list is not exhaustive, as evidenced by the plain language of the Rule.

[19/]   There can be no dispute that dismissal of Count Ten is a proper constitutional remedy here. As noted, supra at p. 11, n.6, venue must be proper as to each count of an indictment. Novak, 443 F.3d at 160-61. And, since the Government has, as a matter of law, failed to establish venue as to Count Ten of the Superseding Indictment, one proper remedy is the outright dismissal of Count Ten. Title 28 U.S.C. Sec. 1406(a) provides in relevant part: "The

. . . / . . .

constitutional venue provisions does it say a criminal defendant shall stand trial in the district

where the crime is alleged to have been committed; instead, both provisions speak in terms

of the predetermination of the crime's location.  See U.S. Const. art. III, §2 ("The Trial of all

Crimes . . . shall be held in the State where the said Crimes shall have been committed.")

(emphasis added); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall

enjoy the right to a[n] . . . impartial jury of the State and district wherein the crime shall have

been committed . . . .") (emphasis added).[20]

    We submit that, in order to effectuate the language of the venue clauses, venue

challenges should be decided prior to trial, particularly when the undisputed facts so clearly

suggest that the venue as alleged in the indictment is improper as a matter of fact and law.

_____

*. . . footnote continued*

district court of a district in which is filed a case laying venue in the wrong . . . district shall
dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it
could have been brought." Should the Court agree with our argument that there is no venue
for Count Ten in the Southern District of New York, we believe the appropriate remedy is
to transfer that charge for trial in the Middle District of Tennessee.  As we urge in Point IV,
infra, because it would be unfair to penalize Vaughn with two trials, for exercising his right
to be tried in the proper venue, the remaining counts against him in the Superseding
Indictment, Counts One through Four, should also be transferred "in the interest of justice."
Rule 21(b), Fed. R. Crim. P.  See also United States v. Ruelas-Arreguin, 219 F.3d 1056, 1060
n.1 (9th Cir. 2000) ("When venue has been improperly laid in a district, the district court
should either transfer the case to the correct venue upon the defendant's request . . . or, in
the absence of such a request, dismiss the indictment without prejudice.") (citations
omitted).

[20] Among several definitions, Black's Law Dictionary defines "shall" as the following: "Has
a duty to; more broadly, is required to . . . .  This is the mandatory sense that drafters
typically intend and that courts typically uphold."  Black's Law Dictionary (8th ed. 2004).
The Oxford Dictionary defines "shall" as, among other things, "expressing a strong assertion
or intention," or "expressing an instruction or command."  The New Oxford American
Dictionary (2d ed. 2005).

Rule 12(b)(2) allows for it and the Constitution requires it.  As Justice Frankfurter emphasized in <u>Johnson</u>, "United States attorneys do not exercise autonomous authority" in deciding where to try a criminal defendant.  <u>Johnson</u>, 323 U.S. at 278.  Yet one cannot help but conclude that he had such a situation in mind in expressing his concern, where defendants are unable to challenge venue until after they have endured a trial in an unconstitutional venue based solely on the Government's word that venue is proper.  This case calls for a contrary result, not only because the Government has overreached; rather, if we are to prevent the erosion of "the fair administration of criminal justice and public confidence in it," <u>id</u>. at 276, we must begin by timely securing and enforcing the most elementary of American constitutional rights.

## POINT IV

### THE COURT SHOULD TRANSFER THE COUNTS AGAINST VAUGHN IN THE SUPERSEDING INDICTMENT TO THE MIDDLE DISTRICT OF TENNESSEE PURSUANT TO RULE 21(B) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.

Rule 21(b) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against the defendant to another district for the convenience of the parties and witnesses and in the interest in justice."

A court has "broad discretion" to transfer a case to another district under Rule 21(b).  <u>United States</u> v. <u>Russell</u>, 582 F. Supp. 660, 662 (D.C.N.Y. 1984).  In deciding whether transfer is appropriate, the Court should consider the factors set forth in <u>Platt</u> v. <u>Minnesota Mining & Manufacturing  Company</u>, 376 U .S. 240 (1964):

> (1) location of the defendants; (2) location of the possible witnesses;
> (3) location of the events likely to be at issue; (4) location of relevant
> documents and records; (5) potential for disruption of the
> defendants' businesses if transfer is denied; (6) expenses to be
> incurred by the parties if transfer is denied; (7) location of defense
> counsel; (8) relative accessibility of the place of trial; (9) docket
> conditions of each potential district; and (10) any other special
> circumstance that might bear on the desirability of transfer.

See United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2nd Cir. 1990). No one of the

factors is dispositive, and "[i]t remains for the court to try to strike a balance and determine

which factors are of greatest importance." Id. (citing United States v. Stephenson, 895 F.2d

867, 875 (2nd Cir. 1990)).

### (1)    Location of the Defendant

Courts in the Southern District of New York have consistently accorded "greater

weight to the defendant's interest in being tried in the district of his residence than to any

other factor." United States v. Valdes, 2006 WL 738403, at *4 (S.D.N.Y. 2006); accord

United States v. Layne, 2005 WL 1009765, at *2 (S.D.N.Y. 2005); United States v.

Martino, 2000 WL 1843233, at *6 (S.D.N.Y. 2000); United States v. Ohran, 2000 WL

620217, at *3 (S.D.N.Y. 2000); Russell, 582 F.Supp. at 662 ("wherever possible, defendants

should be tried where they reside").

> Courts give greater weight to the location of the defendant because:
>
> too frequently prosecutions are not brought in the defendants' home
> districts but rather in the district most convenient to the director of
> internal revenue. Often that district may be a considerable distance
> from the defendant's home. The cost and inconvenience to a
> defendant may be substantial, especially in the case of an extended
> trial. The additional expense to the defendant of living away from
> home, the problem of getting his local attorneys to leave their
> offices and practices for several days or weeks and the increased
> cost incurred thereby, the inconvenience to witnesses, these are all

> factors which the committee believes place a heavy burden upon the
> defendant which can be better borne by the Government.

Martino, 2000 WL at *6. (quoting Sen. Rep. No. 85-1952, at 3-4 (1958), reprinted in 1958
U.S.C.C.A.N. 3261).

Another reason courts give greater weight to this factor is that "family obligations,
including the care of children, militates in favor of transferring proceedings to the district in
which a defendant resides." Valdes, 2006 WL 738403 at *4. For example, in United States
v. Hanley, 1995 WL 60019, at *2 (S.D.N.Y. 1995), the trial court transferred a case from
New York to California in large measure so the defendant could be closer to his wife and
three-year-old child and tend to his elderly grandmother. Similarly, in United States v.
Russell, 582 F. Supp. 660, 662 (S.D.N.Y. 1984), the trial court found that defendants living
with three college-aged children in Memphis "argues strongly" for transfer of the case from
New York to Tennessee. See also Valdes, 2006 WL 738403 at *4 ("Defendants' residence
and family responsibilities in Florida clearly favor transfer of venue to Florida.") (emphasis
added).

Although Vaughn is not seeking a transfer to the district of his residence, the Western
District of Louisiana, he is seeking a transfer to the Middle District of Tennessee, which is
considerably closer to the district of his residence than is the Southern District of New York.
Vaughn would suffer a tremendous hardship if the trial is held in the Southern District of
New York. He lives half-way across the country in West Monroe, Louisiana, with his wife
and two children, ages 2 and 4. See Barrett Dec., ¶¶ 2 & 7. Vaughn's former wife and their
two children, ages 10 and 14, also live in West Monroe. Id. at 7. Vaughn can not afford to
move his family to New York City for a prolonged period of time. See id. at ¶ at 11. Since

the trial of this case is likely to last three or more months, he would be deprived of their support during this long and difficult time.

Additionally, Vaughn has family and religious obligations which militate in favor of transferring the case to the Middle District of Tennessee. Vaughn is devoted to caring for his elderly mother and grandmother, who live in West Monroe, and visits them multiple times per week. Id. at 8. Vaughn is a deeply religious man and teaches weekly bible class for 4th grade boys at his church in West Monroe and he attends service twice per week. Id. at 4. Vaughn will not be able to fulfill his duties to his family, students or attend worship service if he is tried in New York.

Trying the case in the Southern District of New York is convenient for the prosecutors, but it will impose a heavy burden on Vaughn. If the Court transfers the case to the Middle District of Tennessee, however, Vaughn will be able to drive home on the weekends to see his family and friends, attend his church, and tend to his business. Id. at 9-11. Vaughn could at least devote one full day per week to his family and church commitments and one full day to managing his business. Id. In addition, Vaughn's family and friends could more easily and economically travel to the Middle District of Tennessee to support him during the course of the trial. Instead of living alone in a hostile environment, isolated and far from friends and family, he will be able to reconnect with his loved ones and to have some semblance of normality for at least a short period of time. Based on the foregoing, the Court should find the first Platt factor weighs strongly in favor of transfer.

### (2)    location of the possible witnesses

The second Platt factor favors transferring this case because the majority of Vaughn's witnesses are located in or near (within driving distance) the Middle District of Tennessee. At least five potential witnesses reside in either the Middle or Western Districts of Tennessee. Id. at ¶12. At least seven witnesses reside in Monroe, West Monroe, or Ouchita Parish, Louisiana, and three witnesses reside in the Dallas, Texas area. Id. Other witnesses reside in Chicago, Illinois, or on the west coast of the United States. Id. See Russell, 582 F. Supp at 663 ("The availability and convenience of [the defendants'] witnesses, while not a controlling factor, is one that should be given considerable weight.").

Furthermore, Vaughn's ability to call witnesses to the Southern District of New York is much more limited than his ability to call these witnesses to the Middle District of Tennessee. It is significantly more expensive and more burdensome for these witnesses to travel to New York; most of them, however, could easily and economically drive to Nashville due to their physical proximity to that venue. See section 6, infra. Also, accommodations and other expenses would be considerably less in Nashville. See Russell, 582 F. Supp at 663 (finding second Platt factor weighed in favor of transfer because "the ability of [the defendants] to call [character witnesses] will be much less, and the cost much more, if the case is tried in New York rather than Memphis.").

Based on the foregoing, the Court should find that the second Platt factor weighs in favor of transfer given the number of witnesses that reside in or near the Middle District of Tennessee.

### (3)    location of the events likely to be at issue

Courts in the Southern District of New York frequently find the third Platt factor "carries considerable weight" and that this factor favors transfer when the "central location" or "nerve center" of events occurred in another district. See, e.g., Valdes, 2006 WL 738403 at *6 (third Platt factor favored transfer when the "central location" of the criminal acts allegedly committed occurred in the Southern District of Florida, not New York); Hanley, 1995 WL 60019 at *3 (third Platt factor favored transfer because "nerve center" of events at issue occurred in Los Angeles, not New York); United States v. Alter, 81 F.R.D. 524, 526 (S.D.N.Y. 1979) (transferring case where "nerve center" of alleged criminal activity located outside district).

Here, it is without dispute that the "central location" and the "nerve center" of events related to Count Ten of the Superseding Indictment occurred entirely in the Middle District of Tennessee as that is where Vaughn allegedly made his false statement to the Government.[21/]  With respect to the other counts, the central location of events is certainly not the Southern District of New York as there are few to no relevant contacts with that district. Accordingly, the Court should find that the third Platt factor weighs strongly in favor of transfer.

### (4)    location of relevant documents and records

The fourth Platt factor is afforded little weight because "given the conveniences of modern transportation and communication, location of relevant documents is of little

---

[21/] See Point 1, supra, which discusses this issue in great detail.

31

consequence one way or the other." <u>Layne</u>, 2005 WL at *4.  Therefore, the Court should find that the fourth <u>Platt</u> factor weighs in favor of neither party.

> **(5)    potential for disruption of the defendants' businesses if transfer is denied**

Vaughn is the manager of a small start-up business, Creative Fundraising Solutions, L.L.C. ("CFS"), that employs 15 full-time employees and eight contract sales representatives. <u>See</u> Barrett Dec. at ¶6.   CFS is dependent upon Vaughn's day-to-day management and supervision.  <u>Id</u>.   The success of the business, as well as the continued gainful employment of Vaughn and his employees, is dependant upon Vaughn being available to oversee CFS's operations. <u>Id</u>.

If Vaughn is tried in the Middle District of Tennessee he will be able to drive to West Monroe on the weekends to tend to his business, employees and customers.  <u>Id</u>.  Spending a few hours each weekend with his business will minimize the potential for disruption and maximize the chance that the start-up will survive the trial.  <u>Id</u>.  <u>See</u> <u>also</u>  <u>United States</u> v. <u>Aronoff</u>, 463 F.Supp. 454, 459 (S.D.N.Y. 1978) (finding fifth <u>Platt</u> factor favored transfer because "to a failing business that depends so much on personal involvement, even a few hours each weekday plus weekends could make a substantial difference."); <u>Valdes</u>, 2006 WL at *7 ("[W]hile interruption is inevitable regardless of where the trial is held, it is undisputable that the extent of any potential disruption would be less if the trial took place in [the alternative venue]."); <u>United States</u> v. <u>Olen</u>, 183 F. Supp. 212, 219 (S.D.N.Y. 1960) (transfer would permit defendants to use evenings and weekends to maintain their accounting practice).   In addition, a trial of Vaughn in the Middle District of Tennessee would be significantly shorter than a trial of all the defendants in the Southern District of

New York, which would give Vaughn a fighting chance of keeping the company alive. Therefore, the Court should find that the fifth <u>Platt</u> factor weighs strongly in favor of transfer.

### (6)    expenses to be incurred by the parties if transfer is denied

Significantly more expenses will be incurred if Vaughn is tried in New York City versus Nashville. Airline travel from West Monroe, Louisiana, to New York City costs between $750.00 and $1,400.00 for a round trip ticket. <u>See</u> Barrett Dec. at ¶13. In contrast, Vaughn and his family could drive round trip to Nashville for approximately $500.00 (1,000 miles x $.50/mile). <u>Id</u>.

Additionally, the expense to transport and provide accommodations for numerous witnesses in New York City will be tremendous. Since most of Vaughn's witnesses live within driving distance of the Middle District of Tennessee, they could easily and affordably drive to Nashville on short notice and return home. Without doubt, the total outlay of funds would be substantially less if transfer is granted. <u>See</u> <u>Russell</u>, 582 F. Supp. at 663 ("[The defendants] would be put to much greater expense by having to come to New York than would be the case if the Government were compelled to go to Memphis. Furthermore, looking to the total outlay of funds required to transport and provide accommodations for all parties, witnesses, and counsel, it is very clear that a trial in Memphis would cost considerably less than would a trial here.").

It is likely that a large number of the Government's witnesses do not reside in or near New York. If true, then the Government will incur substantially the same expense no matter where the trial is held. In any event, the Government is in a far better position to

bear any added expense; whereas the expense of his trial in New York will be tremendous. See Barrett Dec. at ¶14.  See e.g., Ohran, 2000 WL 670217 at *4 ("While a trial in [the alternative venue] might cause greater expense to the Government than it would to [the defendant], the Government is clearly in a better position to bear that expense."); United States v. Gruberg, 493 F. Supp. 234, 243 (S.D.N.Y. 1979) ("The Government's convenience is, however, a factor given little weight when other considerations of convenience suggest transfer of a trial under Rule 21(b).").

Given the significant overall expenses for defense costs and particularly the financial burden that Vaughn will incur if transfer is denied and the trial is held in the Southern District of New York, the Court should find that the sixth Platt factor weighs in favor of transfer.

### (7)     location of defense counsel

While Vaughn recently retained local counsel in New York, his lead counsel of more than two years, Butler Snow, is headquartered in Jackson, Mississippi, and has a major office in Memphis, Tennessee.  See Barrett Dec. at ¶15.   If the court grants transfer to the Middle District of Tennessee, Vaughn's lead counsel will be able to work using the resources from its Tennessee office and return home on the weekends.  Id.   In addition, Vaughn's counsel will have substantially greater access to critical support staff.  The Court, therefore, should find that the seventh Platt factor weighs in favor of transfer.

### (8)     relative accessibility of the place of trial

Since Vaughn and the majority of Vaughn's witnesses reside in Louisiana or Tennessee, the Middle District of Tennessee is relatively more accessible (especially by

automobile) than the Southern District of New York.   Therefore, the Court should find the eighth <u>Platt</u> factor weighs in favor of transfer.

**(9)    docket conditions of each potential district**

The ninth <u>Platt</u> factor weighs in favor of transfer because the docket in the Middle District of Tennessee is less congested than the docket in the Southern District of New York.   According to the United States Administrative Office of Courts, the Middle District of Tennessee for the year 2007 had only 1,844 cases pending[22]; whereas the Southern District of New York had 24,791 cases pending—1,344% more cases than the Middle District of Tennessee.[23]   As such, the Middle District of Tennessee is better suited to handle the trial of this matter.

**(10)    any other special circumstance that might bear on the desirability of transfer**

The protection of Vaughn's constitutional and statutory venue rights is a special circumstance that strongly favors transfer of Count Ten and the other counts against Vaughn in the Superseding Indictment to the Middle District of Tennessee, despite any purported Government interest in trying Vaughn with the other defendants.   Article III, section 2 of the United States Constitution mandates: "The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed."   Also, the Sixth

---

[22]   <u>See</u> Administrative Office of Courts website, Judicial Case Load Profile for Middle District of Tennessee, *available at* http://www.uscourts.gov/cgi-bin/cmsd2007.pl (last visited April 30, 2008).

[23]   <u>See</u> Administrative Office of Courts website, Judicial Case Load Profile for Southern District of New York, *available at* http://www.uscourts.gov/cgi-bin/cmsd2007.pl (last visited April 30, 2008).

Amendment to the Constitution requires: "In all criminal prosecutions, the accused shall enjoy the right to a[n] . . . impartial jury of the State and district wherein the crime shall have been committed . . . ." Rule 18 of the Federal Rules of Criminal Procedure mirrors these constitutional provisions and states, in pertinent part, that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."[24/]

Count Ten of the Superseding Indictment alleges that Vaughn violated 18 U.S.C. §1001 when he "gave false testimony" during "an examination by the IRS of tax shelters marketed by Ernst & Young." See Superseding Indictment ¶133. It is an undisputed fact that this "examination" took place entirely in Nashville, Tennessee. Accordingly, venue is proper only in the Middle District of Tennessee, where the alleged false statements were made.

The Government's interest in avoiding possible duplication of effort in this case by forcing Vaughn to endure two trials is not compelling. See Valdez, 2006 WL 738403 at *9 (noting that the Government's interest in a joint trial is appropriately weighed as a "special element", but holding that any such considerations were outweighed by other factors, most importantly the defendant's interest in being tried closer to home); United States v. Knight, 822 F.Supp. 1071, 1072 (S.D.N.Y. 1993) (granting a transfer because, in part, it is not

---

[24/] See also United States Department of Justice, United States Attorneys' Manual: False Statements and Venue § 9-918 (1997) ("The Supreme Court has cautioned that the venue rules are not to be treated lightly. The Sixth Amendment of the United States Constitution has been interpreted to provide a guarantee of trial in the state and district in which the crime was committed.").

"interests of justice for the defendant" to endure two trials); Aronoff, 463 F. Supp. at 460

(granting transfer of defendant in multi-defendant case, despite the "substantial hardship and

inconvenience to the Government" of having two trials.)

In United States v. Clark, 360 F. Supp. 936, 944 (S.D.N.Y. 1973), the Court granted a

Rule 21(b) transfer to some, but not all, of the defendants, requiring the Government to

conduct two trials. The district court admonished: "the situation the Government now faces

was brought about by its own questionable decision to prosecute this case in a district

remote from most of the events and persons involved." Id. at 946. Here, the Government

may have to try two cases, but this situation was brought about by its own questionable

decision to charge Count Ten in a district completely removed from the events and persons

involved. Moreover, prior to indictment, Vaughn's counsel notified government attorneys

from the United States Attorney's Office, Southern District of New York, and from the Tax

Division of the United States Department of Justice of Vaughn's right to be tried in the

proper venue with respect to the false statement charges. See Barrett Dec. at ¶16. Such

haphazard disregard for Vaughn's venue rights

> not only opens the door to needless hardship to an accused by
> prosecution remote from home and from appropriate facilities for
> defense. It also leads to the appearance of abuses, if not to abuses,
> in the selection of what may be deemed a tribunal favorable to the
> prosecution.

Clark, 260 F .Supp. at 936.

The Government's decision to indict Vaughn in an unconstitutional venue should not

serve as a justification to inflict the substantial economic and emotional costs of enduring

two trials. Vaughn is faced with a bleak choice – exercise his constitutional venue rights and

face two lengthy, expensive trials, virtually ensuring the death of his business and removing the person on whom his mother, grandmother, and young children rely on for support, or waive his constitutional right to venue. Such an ultimatum "needlessly penalizes the assertion of a constitutional right," United States v. Jackson, 390 U.S. 570, 583 (1968), and is an ultimatum the Government "cannot impose". Id. See also Kepner v. United States, 195 U.S. 100, 135 (1904) ("[I]t cannot be imagined that the law would deny to a [defendant] the correction of a fatal error unless he should waive other rights so important as to be saved by an express clause in the Constitution of the United States.").

### The Platt factors weigh in favor of transfer

The Platt factors strongly weigh in favor of transfer of the counts against Vaughn in the Superseding Indictment to the Middle District of Tennessee. Transfer to that district would permit Vaughn to drive home on the weekends to see his wife and children and to take care of his mother and grandmother. It would permit him to see his students and to attend his church. He would be able to manage his business, counsel his employees and tend to his customers. Vaughn's ability to call witnesses would not be compromised by distance and expense and many, if not most, of the witnesses could easily and affordably drive to the trial. Finally, trial in the Middle District of Tennessee would protect Vaughn's constitutional and statutory venue rights as this is where the alleged false statements were made. For the foregoing reasons, Vaughn respectfully requests the Court to transfer the trial of the counts against Vaughn in the Superseding Indictment to the Middle District of Tennessee.

## POINT V
## THE GOVERNMENT SHOULD BE REQUIRED
## TO PROVIDE VAUGHN WITH THE
## PARTICULARS HE HAS REQUESTED

The controlling legal principles are well established.  A bill of particulars allows a

criminal defendant to identify with sufficient particularity the nature of the charges pending

against him, thereby enabling him to prepare for trial, to prevent surprise and to interpose a

plea of double jeopardy should he be prosecuted a second time for the same offense.  Wong

Tai v. United States, 273 U.S. 77, 82 (1927); United States v. Glaze, 313 F.2d 757, 759 (2d

Cir. 1963).  The decision whether to grant a bill of particulars rests within the sound

discretion of the district court.  United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

A bill of particulars is required, however, "where the charges of the indictment are so general

that they do not advise the defendant of the specific acts of which he is accused."  United

States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (quoting United States v. Torres, 901 F.2d

205, 234 (2d Cir. 1990)).

### A.    The Particulars With Respect To The Venue For Count Ten.

We have requested that the Government provide particulars with respect to venue, in

this way:

> Specify the conduct of the defendant Vaughn which the
> Government will claim at trial supports the allegation that
> Vaughn committed the alleged crime in the Southern District
> of New York.

A defendant is entitled to be provided with adequate notice of the facts upon which

the Government will base its claim of venue.  The indictment, Count Ten, makes the

conclusory assertion that there is venue in the Southern District of New York, "but provides

39

no further information.  Given that the deposition was conducted entirely in Nashville,

Tennessee, which is not in the Southern District of New York, the Government should be

directed to provide the particulars we have requested.  See Valdes, 2006 WL 738403, at *2

(it was "appropriate to require the Government to provide a bill of particulars describing

facts it intends to establish at trial which it claims are sufficient to establish venue in this

district.") (citation and internal quotation omitted).

### B.     The Particulars With Respect To The Charges In Count Two Through Four.

Vaughn's request for particulars with respect to the charges in Counts Two through

Four, where he is charged with having aided and abetted in the attempted tax evasion of two

entities and a married couple, see Tucker Dec. at ¶23, should also be granted.  The

particulars we have requested are restricted to the alleged acts of evasion which postdate the

filing of the returns in issue.  These three Counts provide no notice to Vaughn of any

conduct by him which aided and abetted, for example, in the alleged false sworn testimony

of the "representative of the L. Trading Group" on August 26, 2003 (Count Two, ¶104), or

in the alleged false sworn testimony given by one of the "partners of the C. Partnership" on

December 15, 2003 (Count Three, ¶112). See Tucker Dec. at ¶24.

Similarly, particulars should be directed concerning the allegation, common to each of

the tax evasion counts, that the principals had decided, with the assistance of E&Y, to

participate in the IRS voluntary disclosure initiative and submit Amnesty letters in which

they would disclose their tax shelter transaction but provide false and misleading

information, e.g., Count Two, ¶103; Count Three, ¶¶110-111; Count Four, ¶124.  As drafted,

40

the Superseding Indictment provides absolutely no notice to Vaughn as to what he is alleged

to have done to aid and abet in post-filing conduct.

## POINT VI

### THE COURT SHOULD, PURSUANT TO BRADY V. MARYLAND, ORDER THE DISCLOSURE OF MATERIALS THAT POTENTIALLY REVEAL A VIOLATION OF 26 U.S.C. §6103 BY THE IRS OR DOJ

There is a significant question as to whether the IRS or DOJ violated the disclosure

procedures of 26 U.S.C. §6103.[25]/ See Tucker Dec. at ¶¶25 – 39. As such, the Court should

order the disclosure of materials that will enable the defense to determine if a 26 U.S.C.

§6103 violation has, in fact, occurred. For a list of materials sought, see Tucker Dec. at ¶29.

The Government has thus far refused to disclose such materials. Tucker Dec. at ¶27.

"Suppression of the evidence" is an appropriate remedy where IRS "personnel have

given each other a license to evade statutory law or the pertinent regulations" in violation of

26 U.S.C. §6103. United States v. Chemical Bank, 593 F.2d 451, 458 (2d Cir. 1958).

Additionally, "[a] district court may dismiss an indictment where the government's

investigatory or prosecutorial conduct violated the defendant's due process rights." United

States v. King, 200 F.3d 1207, 1213 (9th Cir. 1999). Further,

> [i]f the Government becomes a lawbreaker, it breeds contempt for
> law; it invites every man to become a law unto himself; it invites
> anarchy. To declare that in the administration of the criminal law the
> end justifies the means[,] to declare that the Government may

---

[25]/ Unauthorized disclosure of material protected under 26 U.S.C. §6103 is a felony, unauthorized inspection is a misdemeanor. See 26 U.S.C. §§7213(a)(1), 7213A(b)(1), respectively.

> commit crimes in order to secure the conviction of a private
> criminal [,] would bring terrible retribution.

United States v. Carriles, 486 F.Supp.2d 599, 616 (W.D. Tex. 2007) (dismissing indictment

where Government engaged in fraudulent conduct) (alterations in original) (quoting

Securities and Exchange Commission v. ESM Government Securities, Inc., 645 F.2d 310,

316 – 317 (5th Cir.1981)).

Here, far from being an attempt to rummage through the Government's files,

substantial evidence exists suggesting it is appropriate to ascertain if a violation of 26 U.S.C.

§6103 did, in fact, occur. The defense has a right to disclosure of materials, pursuant to

Brady v. Maryland, 373 U.S. 83 (1963), "that, if suppressed, would deprive the defendant of a

fair trial." United States v. Bagley, 473 U.S. 667, 675 (1985). Additionally, evidence of such

violations of 26 U.S.C. §6103 would be crucial in impeaching the credibility of Government

witnesses, see Kyles v. Whitley, 514 U.S. 419, 433 (1995) (no distinction between exculpatory

evidence and favorable impeachment evidence for Brady purposes); it is hard to imagine a

fact more damaging to the credibility of a Government IRS witness than their potential

involvement in a violation of 26 U.S.C. §6103. The defense should, at least, be placed in the

same position as the defendants in United States v. Stein. See Tucker Dec. at ¶39.

For these reasons, the Court should order the Government to disclose the materials

which the defense promptly requested once the potential violation of 26 U.S.C. §6103 came

to light in United States v. Stein.

## CONCLUSION

**COUNT TEN OF THE SUPERSEDING INDICTMENT
SHOULD BE DISMISSED; IN THE ALTERNATIVE, THE
VENUE FOR COUNT TEN AND THE ENTIRETY OF THIS
PROCEEDING SHOULD BE TRANSFERRED TO THE
MIDDLE DISTRICT OF TENNESSEE; TOGETHER WITH
AN ORDER DIRECTING THAT THE ADDITIONAL
RELIEF REQUESTED IN THE NOTICE OF OMNIBUS
PRETRIAL MOTION BE GRANTED**

Dated:    Jackson, Mississippi
          May 5, 2008

                              Yours, etc.

                              BUTLER, SNOW, O'MARA,
                                STEVENS & CANNADA, PLLC

                    By:    _____

                              PETER H. BARRETT, ESQ. (3612)
                              Attorneys for Brian Vaughn
                              P.O. Box 22567
                              210 E. Capitol Street, 17th Floor
                              AmSouth Plaza Building
                              Jackson, MS 39225-2567
                              Tel. No.: (601) 985-4544
                              Fax No.: (601) 985-4500
                              Email: peter.barrett@butlersnow.com


                              PAUL B. BERGMAN, P.C.

                              _____

Of Counsel:                   PAUL B. BERGMAN, ESQ. (0502)
                              Attorney for Brian Vaughn
    James B. Tucker, Esq.     950 Third Avenue
    Peter H. Barrett, Esq.    New York, NY 10022
    Amanda B. Barbour, Esq.   Tel. No.: (212) 355-7711
    Paul M. Ellis, Esq.       Fax No.: (212) 755-5509
    Paul B. Bergman, Esq.     Email: berglaw@mindspring.com
    Brian C. Danahy, Esq.

43