**APPENDIX C**

Taxpayer Confidentiality: Civilian Casualty in War on Shelters?

The government's aggressive campaign to intimidate firms withholding information regarding their shelter transactions went to new levels last week when it filed court papers containing the names of firm clients who engaged in the transactions under question.

============== SUMMARY ==============

The government's aggressive campaign to intimidate firms withholding information regarding their shelter transactions went to new levels last week when it filed court papers containing the names of firm clients who engaged in the transactions under question.

While it is not clear that the government violated its duty to keep taxpayer information confidential when it attached KPMG's privilege logs to a petition to enforce promoter summonses issued against the firm, it clearly crossed a line by releasing the court filings to the press before they were available to the firms.

Even if the government's actions were technically legal, its use of the press to go after accounting firms and their clients evinces a fundamental failure somewhere. Is it fallout from a hopelessly complex tax law, overarching avarice, or the demise of professional standards of all involved? In any event, you know the self-assessment system is in trouble when the media becomes a tool for enforcing the tax code.

The release of the investor names is a very bad policy decision, said a tax practitioner. It apparently results from a short-term view that the release will advance the current antishelter initiatives, the litigator said. "The taxpayer's belief in the confidentiality of . . . return information, whether accurate or not, is a cornerstone of the voluntary compliance system."

The disclosures send a long-term message that even the "biggest hitter" is not immune from an IRS release of return information when it suits the IRS to do so, said the lawyer. "That is a very, very unwise message to send taxpayers at a time when return examinations are at an all-time low."

============== FULL TEXT ==============

The government's aggressive campaign to intimidate firms withholding information regarding their

1

shelter transactions went to new levels last week when it filed court papers containing the names of firm clients who engaged in the transactions under question.

While it is not clear that the government violated its duty to keep taxpayer information confidential when it attached KPMG's privilege logs to a petition to enforce promoter summonses issued against the firm, it clearly crossed a line by releasing the court filings to the press before they were available to the firms.

Even if the government's actions were technically legal, its use of the press to go after accounting firms and their clients evinces a fundamental failure somewhere. Is it fallout from a hopelessly complex tax law, overarching avarice, or the demise of professional standards of all involved? In any event, you know the self-assessment system is in trouble when the media becomes a tool for enforcing the tax code.

The release of the investor names is a very bad policy decision, said a tax practitioner. It apparently results from a short-term view that the release will advance the current antishelter initiatives, the litigator said. "The taxpayer's belief in the confidentiality of . . . return information, whether accurate or not, is a cornerstone of the voluntary compliance system."

The disclosures send a long-term message that even the "biggest hitter" is not immune from an IRS release of return information when it suits the IRS to do so, said the lawyer. "That is a very, very unwise message to send taxpayers at a time when return examinations are at an all-time low."

The Actions

On July 9, the Justice Department filed two summons enforcement actions against KPMG and BDO Seidman relating to the Service's ongoing shelter promotion investigations of the two firms. By mid-afternoon the same day, both agencies had issued press releases about the actions.

The news releases explained that a petition had been filed in the district court in Washington to enforce nine summonses issued to KPMG while investigating whether it complied with the obligations to register tax shelters and to maintain lists of investors in potentially abusive tax shelters. The summonses requested documents covering transactions the IRS considered to be abusive tax shelters. The IRS was challenging KPMG's assertion of the attorney-client privilege and the federally authorized tax practitioner privilege under section 7525.

The action against BDO Seidman was filed the same day in the eastern division of the northern district of Illinois. The IRS is seeking to enforce 20 summonses in that case. (For prior coverage, see Tax Notes, July 15, 2002, p. 338.)

The IRS respects lawful claims of privilege, but it cannot evaluate unsubstantiated claims, IRS Chief Counsel B. John Williams Jr. said in the IRS news release. "When taxpayers and promoters won't provide sufficient details to evaluate claims of privilege, they force the IRS to seek court intervention to obtain the summonsed information."

Several news organizations received copies of the petitions and attached IRS agent declarations on July 9. Both The Wall Street Journal and The New York Times ran articles on July 10. See Cassell Bryan-Low, "IRS Leans on KPMG, BDO Seidman to Compel Tax-Shelter Disclosures," The Wall Street Journal, July 10, 2002; David Cay Johnston, "U.S. Accuses 2 Audit Firms of Assisting Tax Violations," The New York Times, July 10, 2002.

Citing "court papers" and "IRS filings," the reports provided details contained in the petitions and declarations that had been filed the day before in the two different courts. BNA's Daily Tax Report carried the full text of both petitions and declarations.

On July 10, the Justice Department released electronic versions of the entire court filings in the KPMG case on a CD-ROM disk. Tax Analysts requested one, and was thereafter inundated with requests for copies of the court documents. The disk contained electronic images of the petition, declaration, and attached exhibits.

Among the documents filed in the Washington district court were an informant's letter to the IRS and privilege logs KPMG had prepared in response to the summonses. The logs describe the type of documents, the names of the sender and the recipient, and the reason for not disclosing the contents. In most cases the documents were withheld under the section 7525 tax practitioner privilege. In the cases of the legal opinion letters from Brown & Wood rendering the tax advice on the transactions, the

attorney-client and work product privileges were also cited.

On July 11, the Forbes on-line publication listed the names of some of the individuals from the KPMG privilege logs. See Janet Novack, "Who Bought KPMG's Aggressive Tax Shelters?" July 11, 2002. By July 12, the more prominent names were fodder for the front page of The Wall Street Journal. See Glenn R. Simpson and John D. McKinnon, "IRS Releases Names of People in Disputed KPMG Tax Shelters," July 12, 2002. See also Ryan J. Donmoyer, "IRS May Seek Tax Shelter Documents From More Firms," Bloomberg News, July 12, 2002.

The disk for the BDO Seidman case was available July 11, but because it was significantly longer, did not run in any of Tax Analysts' publications until July 16.

The order to show cause in the KPMG action was signed by the district judge in Washington on July 16, while the BDO Seidman order has yet to be signed and served.

Privacy and Politics

The government's disclosure of KPMG's client names has spurred debate among practitioners over the scope of section 6103, and the appropriateness of the disclosures, even if legal. A harsh editorial in The Wall Street Journal called for the firing of the person responsible for the "abuse of government power." See "The IRS Out of Control," July 17, 2002.

One taxpayer named in the IRS documents is Bill Simon, a Republican candidate running for governor of California. The Wall Street Journal editorial points out that the IRS has left itself open to charges of political partisanship because Justice's lead litigator is a Democratic activist.

"I was surprised to see them putting the names out, and I was disappointed," said former IRS Commissioner Donald C. Alexander, who reported to Bill Simon's father, Treasury Secretary William E. Simon, who held office from 1974 to 1977. "I think that running for governor does not in any way waive one's right to taxpayer privacy."

The Service's release of confidential tax data of many prominent U.S. citizens, including a current candidate for governor of California, demonstrates the IRS's total disregard for the privacy of U.S. taxpayers, according to Tom Giovanetti, president of the Institute for Policy Innovation, a nonprofit public policy research organization based in Dallas. In this day of increased concern about financial data and personal privacy, the IRS's actions demonstrate yet another reason for fundamental tax reform, concludes a study recently released by the Institute, Tax Reform: The Key to Preserving Privacy and Competition in a Global Economy.

Confidentiality Statute

The government is charged with keeping tax returns and return information confidential, except in the instances specifically allowed in section 6103. The definition of return information under section 6103(b)(2) includes a taxpayer's name, whether the taxpayer's return is being investigated, or any other information supplied to or collected by the IRS in connection with the return and any determination of a liability of any person.

The IRS is authorized to disclose return information to the Justice Department in the course of an investigation of a matter that could lead to a tax proceeding in district court as long as the return information "relates or may relate to a transactional relationship between a person who is or may be a party to the proceeding and the taxpayer which affects, or may affect, the resolution of an issue in such proceeding or investigation." Section 6103(h)(2)(C).

Disclosures of return information in judicial and administrative tax proceedings are among the exceptions contemplated under section 6103(h)(4). That subsection permits disclosures in circumstances that parallel, but are stricter than, IRS disclosures to the Justice Department under section 6103(h)(2).

When the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability, in respect of any tax imposed, disclosure is allowed under section 6103(h)(4)(A). Or if the return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer that directly affects the resolution of an issue in the proceeding, disclosure is permitted under section

3

6103(h)(4)(C).

Interestingly, a version of the Taxpayer Bill of Rights 2000 would have required a notice and redaction procedure in every administrative or judicial proceeding in which third-party tax data may be introduced under section 6103(h)(4). In a report to Congress on taxpayer confidentiality and disclosure provisions, Treasury cited abusive tax shelter promoter penalty cases as one of the many instances in which the Justice Department may need to disclose tax information of a person who is not a party to the proceeding.

Treasury recommended against the notice procedure, saying it would be too burdensome on the government and created delays in judicial and administrative proceedings. The provision was eliminated.

Who's the Taxpayer?

Several practitioners familiar with section 6103 assumed that the government had a colorable argument for disclosing KPMG client names in the privilege logs under the third-party information exception in section 6103(h)(4)(C). But sources familiar with the government's case revealed last week that the government is not relying on the third-party data exception.

In the government's view, attaching KPMG's privilege logs to the petition is permitted under section 6103(h)(4)(A), which allows disclosure of return information if the taxpayer is a party to a proceeding that arises out of a determination of the taxpayer's liability. The government interprets broadly the definition of return information. KPMG is the taxpayer to the proceeding, and its privilege logs are considered the firm's tax information, according to a source familiar with the case.

As for the argument that the names of KPMG's clients are their own tax information, the government's position is that the privilege logs contain names of recipients of documents. Whether those names are return information depends on whether the names are part of a file or an investigation of those other people, according to the source. The government's analysis for purposes of this enforcement action is that KPMG is the taxpayer under investigation, and that it does not know whether the privilege log descriptions contain anyone else's tax return information.

All the information in the privilege logs are "other data" and are the "return information" of KPMG, the source explained the government's argument. The Justice Department reasons that just because a person's name is mentioned in a document given to the IRS doesn't mean that the document, or that part of the document, is the person's return information. For example, the source explained, information obtained by the IRS in the examination of A becomes the "return information" of A and not B, even if that information also mentions B. In the government's view, the document is the return information of the person whose liability is under examination.

There is no doubt that KPMG is the taxpayer in the summonses enforcement proceeding, observed one tax lawyer familiar with section 6103 matters. But the question is whether the individual client identities are return information furnished to the IRS under the definition of return information in section 6103(b)(2)(A), the litigator said. The government is confused about who the taxpayer is, not for purposes of proceeding exception, but for purposes of definition of what is required to be protected, he said.

All information about third parties, even if it relates to their finances, is not "return information," counters the source familiar with the government's position.

As a general rule, a client's name is not privileged, the tax litigator said, but it is return information. And in the hands of the IRS, it remains return information, he said. The proper analysis is whether the clients' names relate to the KPMG transactions such that it is necessary to the resolution of whether the firm met its reporting obligations regarding those transactions, the litigator said. Moreover, the government's analysis renders section 6103(h)(4)(C) useless, he pointed out.

The third-party exception generally applies in litigation when the information disclosed is not the return information of the party to the litigation, in the government's view. For example, a party to a lawsuit claims that his payment to his former wife is deductible alimony and not child support. In the examination of the wife's liability for income taxes, the IRS found that the wife had not reported the alimony as income and claimed that it was child support. Information the IRS collected in examining the wife-nonparty's income tax liability, that is, the nonparty's return information, including the nonparty's tax return, may be useable in litigation with the husband under section 6103(h)(4)(C), according to the government's reasoning.

Not disputing the government's view of the scope of the third- party exception, the litigator maintains that the position that the document is the return information of the person whose liability is under examination is flatly inconsistent with the definition of return information under section 6103(b)(2)(A).

Reaction

The Justice Department's analysis makes Bill Simon a party to the proceeding, Alexander said. While it seems to him that there is a plausible case for disclosure under the third-party exception, Alexander believes that the government needs to explain why Bill Simon's tax liability is determined in the proceeding in which his name was disclosed.

And even if legal, tax practitioners are divided on the appropriateness of the disclosures.

Although some people think it is wrong to have attached the logs to the petition, Michael C. Durney said, "this is high-stakes litigation." The logs were furnished to the government with no protective order, and the government attached them to the petition. The government is just playing "hardball," in his view.

Others think that because the disclosure was done for maximum publicity, and because Williams has said that the government is taking the actions for maximum deterrent effect, the firm has a potential bad-faith claim against the government. The actions are indicative of the fact that the IRS was more interested in making a splash than in due process, said one litigator.

"B. John Williams is one of finest tax lawyers I know," declared Roger M. Olsen, a former attorney general for the Justice Department's tax division. He's the only IRS Chief Counsel who has held high-ranking positions in the IRS and the Justice Department, served on the Tax Court bench, and been in private practice, he pointed out. Williams has great credentials, he said, "he's smart, hardworking, and not afraid to make tough decisions."

There is a great deal of money involved in the transactions under scrutiny, Olsen points out. As a matter of tax administration, he asks, "can we afford to let people hide behind claims of privilege when selling shelters?" The greed and avarice of those involved look like they have no limits, he added.

The position taken on the tax return is not an opening bid, Olsen said. The government ought to close up shop if it can't get information relating to the hundreds of millions of dollars in claimed losses, he said.

Available But Not Accessible

The government made another strategic call on the day the petitions were filed in the two federal district courts. It provided copies of the petitions and IRS agent declarations to the press before the documents were available to the law firms involved.

The first access the firms had to the petitions or attachments was what they were able to obtain from the press. This conclusion is based on a variety of circumstances and sources, not the least of which are the calls Tax Analysts received once it had the electronic court filings, and the statements made on behalf of the government agencies themselves.

Once filed, the court documents were publicly available documents that anyone had access to, an IRS spokesperson told Tax Analysts. "When we have an important tax administration case, we can pass along publicly available documents to the press upon request."

As to whether the petitions were provided to press on the day they were filed, the spokesperson said that, as a professional courtesy, he would not discuss specifics of the interactions between the IRS and individual reporters.

When asked if the Justice Department provided copies of the court filings to the press, a spokesperson said, that it did, "as it always does," make the documents public once the suits were filed with the courts. "As with all suits, these papers were publicly available as soon as they were filed." The spokesperson said that DOJ provided copies to the parties when they requested them, and that "when I received calls, I accommodated those requests."

DOJ's customary practice in a summons enforcement action is to serve the other party when the court issues its show-cause order, the spokesperson said. A litigator experienced in summonses enforcement actions explained that there can be a time lag of up to two weeks between the time the petition to enforce is filed and the time the judge signs the show-cause order. Indeed, the KPMG order was signed one week

5

after the filing of the petition. At the time this article went to press, the BDO Seidman order had not been signed.

A few former Justice officials confirmed that service is typically performed by first-class mail. In important cases, however, they said that at the time the petition was being filed, the government litigator would either fax a copy to opposing counsel, or call counsel to send over a messenger. This is due to the circumstance that although court filings are technically a part of the public record when filed, parties don't necessarily have access to them.

The position that the documents were publicly available on filing is problematic for several reasons. First, in reality, the firms could not get copies of the petitions from either courthouse on July 9 because the court had not processed them. Even after the courts processed the petitions, the voluminous attachments caused delays of several days in the processing of the filings. Some practitioners reported trying to get the documents from the two courthouses, and were unable to get them for several days.

Several former government lawyers expressed dismay over the government's disclosure of the KPMG summons enforcement petition to the press before KPMG or its counsel was given a copy. They acknowledged that until the court signs the order to show cause, the government is not technically obliged to give the other side a copy of the petition. But at a recent meeting of litigators, many of them former government officials, nobody could remember a time that a petition was filed and disclosed to the press before giving the other side a copy. A number of the lawyers agreed that it is not only unusual, it is unprecedented, and reflects poorly on the government.

Acknowledging that the actions may have been legal within Rule 4 of the Federal Rules of Civil Procedure and section 6103 of the code, Durney said, "I think it is heavy-handed and completely lacking in professionalism."

The minimum level of professionalism would demand that counsel for the firms be given notice at the same time or immediately after the petitions were filed, said Olsen. It is not a matter of courtesy, it is more a matter of professionalism, he agreed. "You are not going to win a case by ambushing someone in the media. It is about trying case in courts."

The government's actions amount to more than just not notifying the firms of the filing of the petitions, Olsen said, "it is taking the affirmative steps to notify media but not the lawyers."

At a minimum these tactics represent a breach of the public trust, said one outraged tax litigator. The voluntary compliance system is in large part predicated on the notion that highly confidential taxpayer information will be strenuously safeguarded by the IRS, he said. The disclosure rules under section 6103 protect such sensitive client information. The release of the names of KPMG's clients is clearly designed to intimidate and stigmatize taxpayers -- taxpayers whose return positions have not even been challenged, the litigator asserted.

It is one thing if the information is disclosed in courthouse filings as a matter of necessity and in due course, he pointed out. It is another when the IRS and Justice Department hand the information over to the press in CD form and hold private meetings with the press contemporaneous with the filing of this information, so that it is the focus of front-page articles the next morning. "This flouts the rules of taxpayer confidentiality and raises ethical and public policy concerns."

Documents

The full texts of the following documents are available from Tax Analysts:

- IRS news release on actions against KPMG, BDO. Doc 2002-16138 (2 original pages) [PDF]; 2002 TNT 132-18

- Justice Department release on action against KPMG, BDO. Doc 2002-16152 (1 original page) [PDF]; 2002 TNT 132-19

- Justice Department petition in KPMG enforcement action. Doc 2002-16497 (11 original pages) [PDF]; 2002 TNT 136-9

- IRS agent declaration in support of Justice Department KPMG enforcement actions. Doc 2002-16498 (21 original pages) [PDF]; 2002 TNT 136-10

- Justice Department petition relating to BDO Seidman enforcement action. Doc 2002-16494 (14 original pages) [PDF]; 2002 TNT 136-6
- IRS agent declaration in support of Justice Department BDO Seidman enforcement actions. Doc 2002-16495 (10 original pages) [PDF]; 2002 TNT 136-7
- Selected exhibits relating to BDO Seidman enforcement actions. Doc 2002-16496 (24 original pages) [PDF]; 2002 TNT 136-8
- Justice Department compilation of court filing in KPMG enforcement action. Doc 2002-16236 (376 original pages) [PDF]; 2002 TNT 133-12
- KPMG privilege logs released by Justice Department. Doc 2002- 16954 (141 original pages) [PDF]
- Treasury's October 2000 report. Doc 2000-25299 (133 original pages); 2000 TNT 192-7
- The full texts of the BDO Seidman Petition and Exhibits (1,472 original pages) and the KPMG Petition and Exhibits are available from Tax Analysts through its Customer Service Department.

---

**Date Published:** 07-19-2002
**Date Added to File:** 07/19/2002 10:17 PM EDT
**Microfiche Number:** Doc 2002-16974 (8 original pages)
**Index Terms:**
**Cross Reference:**